**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| XL SPECIALTY INSURANCE COMPANY, | Civil Action No.: 1:18-cv-00733 |
| Plaintiff, | |
| v. | **PLAINTIFF AND COUNTERCLAIM-DEFENDANT XL SPECIALTY INSURANCE COMPANY'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS CLAIMS AND STRIKE ALLEGATIONS OF THE SECOND AMENDED COUNTERCLAIM** |
| PRESTIGE FRAGRANCES, INC., | |
| Defendant. | |
| PRESTIGE FRAGRANCES, INC., | |
| Counterclaim-Plaintiff, | |
| v. | |
| XL SPECIALTY INSURANCE COMPANY, | |
| Counterclaim-Defendant. | |

Dated: June 5, 2018

**GOLDBERG SEGALLA LLP**

Todd D. Kremin
711 3rd Avenue, Suite 1900
New York, NY 10017-4013
(646) 292-8700

Louis H. Kozloff
Hillary N. Ladov
1700 Market Street, Suite 1418
Philadelphia, PA 19103
(267) 519-6800

*Attorneys for Plaintiff/Counterclaim-Defendant*
*XL Specialty Insurance Company*

## <u>Table of Contents</u>

I.   INTRODUCTORY STATEMENT ................................................................... 1

II.  THE CLAIMS AND ALLEGATIONS OF THE SECOND AMENDED
     COUNTERCLAIM ................................................................................ 2

III. ARGUMENT ........................................................................................... 5

     A.  Standards for Motions to Dismiss and Motions to Strike........................... 5

     B.  Choice of Law ............................................................................... 6

     C.  Prestige's Claim for Consequential Damages Should be Dismissed .......... 6

     D.  Prestige's Claim for Attorneys' Fees Should be Dismissed..................... 12

     E.  Allegations of XL Specialty's Participation in Collateral Litigation
         Should be Stricken.......................................................................... 17

IV.  CONCLUSION...................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Am. Home Assurance Co. v. Masters' Ship Mgmt. S.A.*,
    423 F. Supp. 2d 193 (S.D.N.Y. 2006) .................................................................................13

*Am. Nat'l Fire Ins. Co. v. Kenealy*,
    72 F.3d 264 (2d. Cir. 1995) ......................................................................................12, 13

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ..............................................................................................5, 6

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (U.S. 2007) ...........................................................................................5

*Cont'l Info. Sys. v. Fed. Ins. Co.*,
    No. 02 CV 4168 (NRB), 2003 WL 145561 (S.D.N.Y. Jan. 17, 2003) .....................................7

*Federal Ins. Co. v. PPG Realty, LLC*,
    529 F. Supp. 2d 460 (S.D.N.Y. 2008) .................................................................................14

*Folksamerica Reinsurance. Co. v. Clean Water of New York, Inc.*,
    413 F.3d 307 (2d Cir. 2005) ........................................................................................15

*Hold Bros., Inc. v. Hartford Cas. Ins. Co.*,
    357 F. Supp. 2d 651 (S.D.N.Y. 2005) .................................................................................9

*I.B. Trading, Inc. v. Tripoint Global Equities, LLC*,
    280 F. Supp. 3d 524 (S.D.N.Y. 2017) .................................................................................6

*Ingersoll Mill. Mach. Co. v. M/V Bodena*,
    829 F.2d 293 (2d Cir. 1987) ......................................................................................13

*Jane Street Holding, LLC v. Aspen American Ins. Co.*,
    No. 13 Civ. 2291 (RWS), 2014 WL 28600 (S.D.N.Y. Jan. 2, 2014) .....................................14

*Markel American Ins. Co. v. Linhart*,
    No. 11-CV-5094 (SJF)(GRB), 2012 WL 5879107 (E.D.N.Y. Nov. 16, 2012) ........................7

*McCarthy v. Dun & Bradstreet Corp.*,
    482 F.3d 184 (2d Cir. 2007) ........................................................................................5

*National R.R. Passenger Corp. v. Arch Spec. Ins. Co.*,
    124 F. Supp. 3d 264 (S.D.N.Y. 2015) .................................................................12, 14, 15, 16

*New York Marine & Gen. Ins. Co. v. Tradeline (L.L.C.),*
    No. 98 Civ. 7840 (HB), 1999 WL 1277244 (S.D.N.Y. Nov. 29, 1999) .................................13

*O.K. Petroleum Distrib. Corp. v. Travelers Indem. Co.,*
    No. 09 Civ. 10273 (LMM), 2010 WL 2813804 (S.D.N.Y. July 15, 2010) ......................14, 17

*Protection Mut. Ins. Co. v. Silgan Plastics Corp.,*
    No. 96 Civ. 4493, NRB, 2000 WL 1277358 (S.D.N.Y. Sept. 7, 2000)..................................12

*Roman Catholic Diocese of Rockville Centre v. General Reinsurance Corp.,*
    No. 16 Civ. 02063 (CM), 2016 WL 5793996 (S.D.N.Y. Sept. 23, 2016) ..........................7, 17

*Roth v. Jennings,*
    489 F.3d 499 (2d Cir. 2007)..................................................................................................18

**State Cases**

*30-40 E. Main St. Bayshore, Inc. v. Republic Franklin Ins. Co.,*
    115 A.D.3d 737 (N.Y. App. 2nd Dep't 2014) ......................................................................17

*Bi-Econ. Mkt., Inc. v. Harleysville Ins. Co. of New York,*
    10 N.Y.3d 187 (2008) ..................................................................6, 7, 8, 9, 10, 11, 17

*Howard Stores Corp. v. Foremost Ins. Co.,*
    82 A.D.2d 398 (1st Dept. 1981)............................................................................................8

*Kenford Co. v. County of Erie,*
    73 N.Y.2d 312 (1989) ...........................................................................................................7

*New York Univ. v. Cont'l Ins. Co.,*
    87 N.Y.2d 308 (1995) .........................................................................................................13

*Panasia Estates v. Hudson Ins. Co.,*
    10 N.Y.3d 200 (2008) ......................................................................................................7, 17

*Stein, LLC v. Lawyers Title Ins. Corp.,*
    100 A.D. 3d 622, 953 N.Y.S.2d 303 (N.Y. App. 2nd Dep't 2012) ........................................17

*Sukup v. State,*
    19 N.Y.2d 519 (1967) ....................................................................................................13, 14

## I.     INTRODUCTORY STATEMENT

This action is an insurance coverage dispute concerning marine cargo insurance policies. Plaintiff XL Specialty Insurance Company ("XL Specialty") seeks a declaratory judgment that three polices issued to Defendant Prestige Fragrances, Inc. ("Prestige") are rescinded and void *ab initio* based on Prestige's misrepresentations of and failures to disclose material information about prior losses when XL Specialty was underwriting the policies.[1]  (Complaint, ECF Dkt. No. 1.) Due to rescission of the Policies, XL Specialty has denied coverage to Prestige for a July 4, 2017 left of inventory at Prestige's warehouse (the "Loss").  Prestige's Second Amended Counterclaim asserts claims for declaratory judgment, breach of contract and breach of good faith and fair dealing.  (ECF Dkt. No. 21.)  Prestige's declaratory judgment and breach of contract claims seek coverage for the Loss and the value of the inventory.[2]  The claim for breach of good faith and fair dealing seeks consequential damages for alleged losses in Prestige's business operations that Prestige claims it incurred as a result of XL Specialty's denial of coverage for the Loss and also seeks attorneys' fees and costs related to this action.

XL Specialty moves to dismiss Prestige's claims for consequential damages and attorneys' fees.  Under either federal admiralty law or New York law, there are limited situations in which an insured, like Prestige, can recover consequential damages or attorneys' fees in an insurance coverage dispute.  Consequential damages are recoverable in a breach of good faith and fair dealing claim only when the nature of the coverage provided by the insurance policy at issue makes the

---

[1]     XL Specialty's claim for rescission concerns the following marine cargo insurance policies issued to Prestige: policy number UM00031200MA14A, policy number UM0031200MA15A, and policy number UM0031200MA16A.  XL Specialty will refer to the policies collectively as the "Policies."

[2]     Prestige seeks coverage under policy number UM00031200MA16A.  XL Specialty will refer to this specific policy as the "Policy."

kind of consequential damages the insured seeks natural and probable, foreseeable and within the contemplation of the parties when the policy was issued.  Attorneys' fees are recoverable only when the insurer's denial of coverage was made in bad faith, meaning that no reasonable insurer would have denied coverage under the circumstances.  Prestige has failed to allege facts sufficient to establish a plausible claim for consequential damages or attorneys' fees under these standards.  Therefore, the Court should dismiss Prestige's claims for consequential damages and attorneys' fees.  And the dismissal should be with prejudice because the Second Amended Counterclaim represents Prestige's second attempt to allege facts sufficient to support its claims for consequential damages and attorneys' fees.  The Court should not allow further leave to amend the Counterclaim.

In addition, the Counterclaim contains allegations that XL Specialty and its affiliates are "institutional litigants in courts around the country" (Counterclaim, ¶ 76), and that its experience in other coverage disputes made it foreseeable to XL Specialty that Prestige would incur attorneys' fees in responding to XL Specialty's Complaint in this action.  (Counterclaim, ¶ 40.)  XL Specialty moves to strike allegations regarding XL Specialty's and its affiliates' participation in other collateral litigation because the allegations are immaterial and impertinent to any properly stated claim or defense in this action, and XL Specialty would be prejudiced if the allegations remain in the pleadings.

## II.   THE CLAIMS AND ALLEGATIONS OF THE SECOND AMENDED COUNTERCLAIM

At issue in this Motion is Prestige's Second Amended Counterclaim (the "Counterclaim").  Count I of the Counterclaim asks for a declaratory judgment that XL Specialty must provide coverage for the Loss.  (Counterclaim, ¶ 54, and p. 24.)  Count II of the Counterclaim asserts one claim for breach of contract in two parts: (1) a breach of contract claim seeking the value of the

loss that would have been covered by the XL Specialty marine cargo insurance policy but for rescission of the Policy; and (2) a claim for breach of the implied covenant of good faith and fair dealing under which Prestige seeks consequential damages resulting from XL Specialty's alleged improper denial of coverage for the Loss.  (Counterclaim, ¶ 59.)  Prestige also seeks attorneys' fees and costs in Counts I and II.  (*Id.* ¶¶ 55, 59, 64, 67, 77 and p. 24-25.)

XL Specialty's Motion to Dismiss concerns Prestige's claims for consequential damages and attorneys' fees.  XL Specialty's Motion to Strike concerns the allegations regarding XL Specialty's and its affiliates' participation in other litigation made in support of these claims.

With respect to the consequential damages Prestige claims, Prestige alleges that it has "sustained undue hardship and harm." (Counterclaim, ¶ 44.)  Prestige alleges that XL Specialty's failure to provide coverage for the Loss caused Prestige to suffer a cash-flow shortage, which limited its ability to purchase new inventory and left Prestige "unable to fill as many sales orders as it otherwise would be able to due to a lack of sufficient quantities of goods on hand." (*Id.*) Prestige also alleges that "because of a change in market conditions, [it] subsequently had to purchase goods at a higher cost than it otherwise would have done had the claim been paid." (*Id.*) Prestige also alleges that it "had to increase its borrowing levels, and at higher interest rates." (*Id.*) Prestige further alleges that it "expended significant resources investigating the Warehouse Theft and cooperating with [XL Specialty] in proving up the full extent of the loss including in the claim." (*Id.*, ¶ 45.)  Prestige also claims that it "has not enjoyed the peace of mind that it expected to receive in return for its payment of premiums, or the comfort of knowing that it promptly would be compensated for its losses pursuant to the Policy." (*Id.*, ¶ 73.)  Prestige appears to allege that consequential damages resulting from XL Specialty's alleged breach of contract include attorneys' fees and costs Prestige will incur in this litigation.  (*Id.*, ¶¶ 64, 67.)

The Counterclaim includes allegations in an attempt to establish that the consequential damages Prestige claims were within the contemplation of the parties at the time they entered into the insurance contract.  Prestige alleges that XL Specialty recognized before it issued the Policies to Prestige that "Prestige would need prompt resolution of claims to move its business forward." (*Id.*, ¶ 46.)  Prestige refers to an informational document distributed to Prestige with the Policy that discusses XL Specialty's claims services, which states, "[o]ur claims teams are ready to resolve your claim so you keep your business moving forward."  (*Id.*, ¶¶ 46, 76, and Ex. A.) Prestige also alleges, "the small, closely-held nature of Prestige's business, as well as the very purpose of the Warehouse Endorsement, would have made [XL Specialty] aware that if it repudiated its obligations under the contract to investigate in good faith, to take only reasonable coverage positions, and to pay covered claims promptly, then it would need to respond to damages for the impact to Prestige's business operations."  (*Id.*, ¶ 47.)

With respect to Prestige's claim for attorneys' fees and costs as consequential damages, Prestige alleges that XL Specialty, "having been an institutional litigant in courts around the country including in this Circuit, knows that policyholders have to engage in the litigation process, hire counsel and incur substantial costs to match the formidable resources of [XL Specialty] where covered claims are denied or paid only in part.  [XL Specialty] undoubtedly knows that as a natural probable result of a breach of the Policy (and commencing the instant lawsuit against its policyholder on the same day it denied insurance coverage for the claim), that Prestige would be compelled to incur litigation fees and costs to enforce its insurance coverage rights for a claim that is covered under the terms of the Policy."  (*Id.*, ¶ 75.)  As the sole example of XL Specialty being a so-called "institutional litigant," Prestige refers the court to a single action filed in this court almost two years ago in which Travelers Property Casualty Company of America was the lead

4

Plaintiff and two affiliates of XL Specialty were also Plaintiffs.  (*Id.*, ¶ 40.)  XL Specialty's Motion to Strike concerns these allegations regarding collateral insurance coverage litigation.

Prestige claims that it is entitled to recover attorneys' fees and legal costs because it was forced to defend itself against XL Specialty's Complaint and to bring its Counterclaim to obtain coverage and recover consequential damages.  Prestige essentially alleges that it is entitled to recover attorney's fees and costs because XL Specialty's rescission of the policies, which resulted in a denial of coverage for the Loss, constitutes bad faith.  (*Id.*, ¶¶ 69-71.)

## III.    ARGUMENT

The Court should dismiss Prestige's claims for consequential damages and attorneys' fees because Prestige has failed to allege facts sufficient to state a plausible claim for relief under the applicable law.  In addition, once these claims are dismissed, or even if they are not, the Court should strike from the Counterclaim impertinent allegations regarding XL Specialty's and its affiliated companies' participation in unrelated, collateral insurance coverage litigation.  These allegations are irrelevant and immaterial to any claim or defense in this Action, and XL Specialty would be prejudiced if the allegations remain in the pleadings.

### A.    Standards for Motions to Dismiss and Motions to Strike

In deciding XL Specialty's motion to dismiss pursuant to Rule 12(b)(6), the Court must accept all factual allegations in the Counterclaim as true and draw all reasonable inferences in Prestige's favor.  *See McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007).  The Counterclaim "must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (U.S. 2007)).   The Court should evaluate the sufficiency of the Counterclaim under the "two-pronged approach" set forth by the Supreme Court in *Iqbal*.  Under the first prong, a court may "begin by identifying pleadings that, because they are

no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679.  For example, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678.  Under the second prong of *Iqbal*, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Id.* at 679.  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.  Plausibility requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.*

A motion to strike immaterial or impertinent matter under Federal Rule of Civil Procedure 12(f) may be granted if the challenged allegations "have no possible relation or logical connection to the subject matter of the controversy and may cause some form of significant prejudice to one or more parties to the action." *I.B. Trading, Inc. v. Tripoint Global Equities, LLC*, 280 F. Supp. 3d 524, 546 (S.D.N.Y. 2017).

### B.    Choice of Law

The XL Specialty Policy upon which Prestige's Counterclaim is based contains a choice of law provision that calls for the application of federal admiralty law to disputes arising under the policy, to the extent that federal admiralty law on the topic in dispute exists.  (Counterclaim, Ex. A, ECF Dkt. 21-1, at pp. 25-26.)  In the absence of federal admiralty law on the issue, New York law applies.  (*Id.*)  As discussed below, federal admiralty law and New York law do not differ significantly on the issues raised in this motion.  Prestige's claims for consequential damages and attorneys' fees fail under both admiralty law and New York law.

### C.    Prestige's Claim for Consequential Damages Should be Dismissed

Prestige's claim for consequential damages is based on the New York Court of Appeals' decisions in *Bi-Econ. Mkt., Inc. v. Harleysville Ins. Co. of New York*, 10 N.Y.3d 187 (2008) ("*Bi-*

*Economy*") and *Panasia Estates v. Hudson Ins. Co.*, 10 N.Y.3d 200 (2008) ("*Panasia*").[3]  *Bi-Economy* and *Panasia* establish that consequential damages are recoverable in a claim that an insurer breached duties of good faith and fair dealing.  *See Bi-Economy*, 10 N.Y.3d at 507-10; *Panasia*, 10 N.Y.3d at 203.   However, the Court of Appeals stated that there are limited circumstances in which special, or consequential damages, "which do not so directly flow" from a breach of good faith and fair dealing, are recoverable.  *See id.*, 10 N.Y.3d at 192.  The necessary elements of a claim for consequential damages under *Bi-Economy* are that the consequential damages: (1) were a natural and probable consequence of the breach of contract; (2) were or should have been foreseeable by the parties to the contract; and (3) were reasonably contemplated by the contracting parties at the time the insurance policy was issued.  *Id.*; *see also Roman Catholic Diocese of Rockville Centre v. General Reinsurance Corp.*, No. 16 Civ. 02063 (CM), 2016 WL 5793996, at *4 (S.D.N.Y. Sept. 23, 2016); *Cont'l Info. Sys. v. Fed. Ins. Co.*, No. 02 CV 4168 (NRB), 2003 WL 145561, at *4 (S.D.N.Y. Jan. 17, 2003).   When determining whether consequential damages were reasonably contemplated by the parties, courts must look to "the nature, purpose and particular circumstances of the contract known to the parties . . . as well as 'what liability the defendant fairly may be supposed to have assumed consciously, or to have warranted the plaintiff reasonably to suppose that it assumed, when the contract was made.'"  *Bi-Economy*, 10 N.Y.3d at 193 (quoting *Kenford Co. v. County of Erie*, 73 N.Y.2d 312, 319 (1989)).

---

[3]       Federal admiralty law on the question of whether an insured can recover consequential damages for breach of an insurance contract or breach of good faith and fair dealing is not well-established.  *See, e.g. Markel American Ins. Co. v. Linhart*, No. 11-CV-5094 (SJF)(GRB), 2012 WL 5879107, at *3 (E.D.N.Y. Nov. 16, 2012).  Therefore, under the XL Specialty Policies' choice of law provision, New York law applies to the question of whether Prestige can recover consequential damages in this action.

*Bi-Economy* demonstrates that the circumstances in which consequential damages are recoverable in an insurance coverage dispute are limited. *Bi-Economy* involved a claim that the insurer failed to provide business interruption coverage to its insured after a fire damaged the building where the insured operated a food market. *See* 10 N.Y.3d at 190-91. As the court explained, business interruption coverage compensates an insured for loss of income it sustains when the insured's business operations are suspended as a result of damage to the insured's property. *See id.* at 191. As the Court of Appeals recognized in *Bi-Economy*, "[t]he purpose of business interruption insurance is to indemnify the insured against losses arising from the inability to continue normal business operation and functions due to the damages sustained as a result of the hazard insured against." *See id.* at 195 (citing *Howard Stores Corp. v. Foremost Ins. Co.*, 82 A.D.2d 398, 400 (1st Dept. 1981)). In the context of the insured's claim for consequential damages in *Bi-Economy*, the Court of Appeals stated, "the purpose served by business interruption coverage cannot be clearer – to ensure that Bi-Economy had the financial support necessary to sustain its business operation in the event disaster occurred." *See id.* at 194. The Court of Appeal's decision reveals that it is the rare case where the nature and purpose of the coverage provided in an insurance policy make consequential damages natural and probable, foreseeable and contemplated by the parties, and therefore recoverable.

The consequential damages that Bi-Economy claimed were losses incurred when its business collapsed because of the insurer's failure to provide sufficient coverage for the insured's lost business income. *See id.* at 191. Based on the specific nature of the business interruption coverage provided by the policy and the type of consequential damages the insured claimed, the Court of Appeals concluded that the insured could recover consequential damages. The court stated, "the very purpose of business interruption coverage would have made [the insurer] aware

that if it breached its obligation under the contract to investigate in good faith and pay covered claims it would have to respond in damages to Bi-Economy for the loss of its business as a result of the breach." *Id.* at 195.  The collapse of the insured's business naturally flowed from the failure to provide coverage for the insured's lost income.  Accordingly, the consequential damages suffered when the insured's business collapsed were foreseeable and contemplated by the insurer when it issued a policy with business interruption coverage specifically covering loss of business income.

The same cannot be said about the coverage provided by the XL Specialty Policy's Warehousing Coverage Endorsement under which Prestige sought coverage for the Loss.  The XL Specialty Policy does not provide business interruption coverage.   Nor does Prestige's Counterclaim point to any particular aspect of the Policy that makes recovery of the kind of consequential damages Prestige seeks foreseeable or within the contemplation of the parties.  Prestige is not required to identify a specific provision of the Policy explicitly allowing recovery of consequential damages.  *See Hold Bros., Inc. v. Hartford Cas. Ins. Co.*, 357 F. Supp. 2d 651, 657 (S.D.N.Y. 2005).  But Prestige must allege beyond sheer possibility that there is something about the nature, purpose or particular circumstances of the XL Specialty Policy and the coverage it provides that makes the type of consequential damages Prestige claims natural, foreseeable and within the contemplation of the parties under the standards articulated in *Bi-Economy*.  Prestige has failed to do so.

The consequential damages Prestige claims relate to ancillary business losses it alleges it sustained because XL Specialty did not provide compensation for the loss of inventory in the July 4, 2017 theft.  Prestige alleges that XL Specialty's failure to provide coverage caused Prestige to suffer a cash-flow shortage, which limited its ability to purchase new inventory and left Prestige

"unable to fill as many sales orders as it otherwise would be able to due to a lack of sufficient quantities of goods on hand." (Counterclaim, ¶ 44.) Prestige also alleges that "because of a change in market conditions, [it] subsequently had to purchase goods at a higher cost than it otherwise would have done had the claim been paid." (*Id.*) Then, when Prestige attempts to identify some aspect of the XL Specialty Policy that makes the consequential damages that Prestige claims foreseeable and within XL Specialty's contemplation, Prestige alleges only that "the very purpose of the Warehouse Endorsement, would have made XL [Specialty] aware" that if it breached the policy and duties of good faith and fair dealing, "then it would need to respond in damages for the impact to Prestige's business operations." (Counterclaim, ¶ 47.)

Prestige does not identify any aspect of the coverage provided in the Warehouse Endorsement or any other provision of the XL Specialty Policy that makes damages related to impact on Prestige's business operations foreseeable or within XL Specialty's contemplation when it issued the Policy. The Warehouse Endorsement does not provide business interruption coverage like the policy in *Bi-Economy;* it provides compensation to the insured for the value of lost or damaged inventory. Therefore, the XL Specialty Policy's purpose is not to compensate the insured for lost business opportunities or ancillary impact on its business arising from the inability to continue normal business operation and functions, as is the purpose of business interruption coverage. Here, Prestige's alleged loss of inventory is akin to the physical damage to Bi-Economy's building caused by the fire. Both are losses to physical property. But the Court of Appeals did not hold that Bi-Economy was entitled to consequential damages for the collapse of its business because those losses naturally flowed from damage to the building or were foreseeable or contemplated because the policy required the insurer to pay to rebuild the building. Rather, the insured's consequential damages for business losses were allowed in *Bi-Economy* specifically

because the policy provided business interruption coverage, the purpose of which was to provide "financial support necessary to sustain business operations." *Bi-Economy*, 10 N.Y.3d at 194. There is no similar coverage providing financial support to an insured in the XL Specialty Policy. Therefore, unlike the business interruption coverage provided by the policy in *Bi-Economy*, the nature of the coverage provided in the XL Specialty Policy does not support recovery of the consequential damages Prestige seeks related to "impact to [its] business operations."

The only other allegation Prestige asserts in an attempt to establish that some aspect of the Policy makes the consequential damages that Prestige seeks natural and probable, foreseeable or contemplated by the parties is a statement made in informational documents provided to Prestige with the policy documents. The document includes a statement that XL's claims team is "ready to resolve your claim, so you can keep moving your business forward." (Counterclaim, ¶ 46.) Prestige also refers to some unidentified marketing materials in which XL Insurance represented that it will "resolve [the policyholder's] covered claim – so [the policyholder] can get back to business as soon as possible." (Counterclaim, ¶ 76.) However, these marketing statements are not part of the insurance policies. In fact, on the same page of the document Prestige cites for the "keep moving your business forward" statement, is the following:

> The information contained herein is intended for informational purposes only. Insurance coverage in any particular case will depend on the type of policy in effect, the terms, conditions and exclusions in any such policy, and the facts of each unique situation. No representation is made that any specific insurance coverage would apply in the circumstances outlined herein. Please refer to the individual policy forms for specific coverage details.

(Counterclaim, Ex. A, ECF Dkt. 21-1, at p. 4.)

In addition, these informational and marketing statements apply generically to any insured policy regardless of the type of coverage the policy specifically provides. As such, they do not indicate why consequential damages of the kind Prestige seeks naturally flow from the failure to

provide compensation for lost inventory.  Nor do the documents indicate that these damages were foreseeable and within the contemplation of the parties based on the nature of the coverage provided.  Therefore, XL Specialty's informational and marketing materials do not establish that the alleged consequential damages related to ancillary impact on Prestige's business are natural and probable, foreseeable or within the contemplation of the parties.

Prestige also alleges that XL Specialty's decision not to provide coverage for the Loss caused it to suffer mental anguish.  (Counterclaim, ¶ 73 (alleging that Prestige has not enjoyed "peace of mind" or the "comfort of knowing that it promptly would be compensated for its losses.") To the extent Prestige seeks consequential damages based on this alleged mental anguish, the claim should be dismissed.  *See National R.R. Passenger Corp. v. Arch Spec. Ins. Co.*, 124 F. Supp. 3d 264, 281 (S.D.N.Y. 2015) ("*Amtrak*") (dismissing insured's claim for loss of peace of mind as consequential damages for the simple reason that a corporation cannot suffer personal humiliation or mental anguish.")

### D.    Prestige's Claim for Attorneys' Fees Should be Dismissed

Prestige cannot recover attorneys' fees in this action under either federal admiralty law or New York law.  Based on the XL Specialty Policies' choice of law provision and the law of the Second Circuit, federal admiralty law governs the issue of attorney's fees and costs in this maritime insurance action.  *See Am. Nat'l Fire Ins. Co. v. Kenealy*, 72 F.3d 264, 270 (2d. Cir. 1995). Nonetheless, Prestige will likely contend that New York law applies.  But, under either federal admiralty law or New York law, Prestige cannot recover attorneys' fees in this action unless XL Specialty's decision to deny coverage was made in bad faith.

Under admiralty law and New York law, the American Rule prohibiting fee-shifting is the general rule.  In admiralty, "[t]he American Rule prohibiting fee-shifting unquestionably applies to an insurer's declaratory judgment action."  *Protection Mut. Ins. Co. v. Silgan Plastics Corp.*,

No. 96 Civ. 4493, NRB, 2000 WL 1277358, at *1 (S.D.N.Y. Sept. 7, 2000) (citing *Kenealy*, 72 F.3d at 270). In New York, "[t]he rule is well settled . . . that the successful party in litigation may not recover attorney's fees, except where authorized by the parties' agreement, statutory provision or court rule." *Cty. of Orange v. Travelers Indem. Co.*, No. 13-CV-06790 NSR, 2014 WL 1998240, at *3 (S.D.N.Y. May 14, 2014); *see also New York Univ. v. Cont'l Ins. Co.*, 87 N.Y.2d 308, 324 (1995). Furthermore, in the insurance context, "an insured may not recover the expenses incurred in bringing an affirmative action against an insurer to settle its rights under the policy." *New York Univ.*, 87 N.Y.2d at 324. Here, there is no agreement between Prestige and XL Specialty authorizing Prestige to recover attorneys' fees. Nor is there a statutory provision or court rule under which Prestige would be entitled to recover attorneys' fees or costs. Therefore, Prestige claims attorneys' fees for XL Specialty's alleged bad faith and as consequential damages.

Under federal admiralty law in the Second Circuit, "the general rule is that the award of fees and expenses in admiralty actions is discretionary with the district judge upon a finding of bad faith." *Ingersoll Mill. Mach. Co. v. M/V Bodena*, 829 F.2d 293, 309 (2d Cir. 1987); *Am. Home Assurance Co. v. Masters' Ship Mgmt. S.A.*, 423 F. Supp. 2d 193, 228 (S.D.N.Y. 2006). This is similar to New York law. Se*e New York Marine & Gen. Ins. Co. v. Tradeline (L.L.C.)*, No. 98 Civ. 7840 (HB), 1999 WL 1277244, *5 (S.D.N.Y. Nov. 29, 1999) (noting similarity between New York and federal admiralty law). In *Sukup v. State*, 19 N.Y.2d 519, 522 (1967), the New York Court of Appeals suggested that an insured can recover attorneys' fees if it prevails in a coverage dispute in which the insurers' position was taken in bad faith. S*ee id.*, at 522.

Under federal admiralty law and New York law, the standard for bad faith that could justify an award of attorneys' fees is not easily satisfied. Under federal admiralty law, a difference of opinion over the availability of coverage does not constitute bad faith. *See Ingersoll Mill. Mach.*

*Co.*, 829 F.2d at 309 (affirming denial of attorneys' fees claim even though the District Court characterized the insurer's explanation for its position as "'contrived, concocted solely to keep from paying' its obligations under the policy."); *Federal Ins. Co. v. PPG Realty, LLC*, 529 F. Supp. 2d 460, 465 (S.D.N.Y. 2008) (finding no bad faith even though insurer's arguments were characterized as "distinctly unpersuasive" and at least one argument was "absurd" because arguments were not "so entirely without color to be indicative of bad faith.").

The standard for bad faith under New York law is similar. In *Sukup*, "bad faith" exist if the grounds for the insurer's denial of coverage are ones that "no reasonable carrier would, under the given facts, be expected to assert." *Id.* However, a mere difference of opinion between insurer and insured over the availability of coverage does not constitute bad faith and does not entitle an insured to attorneys' fees if the insured prevails. *See Jane Street Holding, LLC v. Aspen American Ins. Co.*, No. 13 Civ. 2291 (RWS), 2014 WL 28600, at *10 (S.D.N.Y. Jan. 2, 2014); *see also O.K. Petroleum Distrib. Corp. v. Travelers Indem. Co.*, No. 09 Civ. 10273 (LMM), 2010 WL 2813804, at *4 (S.D.N.Y. July 15, 2010).

Under either New York law or federal admiralty law, Prestige's Counterclaim does not allege facts sufficient to establish a plausible claim for bad faith supporting an award of attorneys' fees. *Amtrak* is the rare case in which a court allowed an insured's claim for attorneys' fees to proceed beyond a motion to dismiss. *See* 124 F. Supp. 3d at 280. *Amtrak* reveals the type of bad faith conduct that must be alleged to state a plausible claim for attorneys' fees. The facts pled in *Amtrak* asserted more than a simple breach of contract claim in which there was a difference of opinion between the insurer and the insured regarding the insurer's denial of coverage. The court held that Amtrak's claim for attorneys' fees was sufficiently pled because Amtrak alleged that the insurers not only declined to make payments required under the policies that were not the subject

14

of reasonable dispute, but that the insurers also "conditioned additional payments of undisputed amounts on certain legal concessions." *Id.*, at 280. This allegation – that the insurers withheld payments that were undisputedly owed to Amtrak because Amtrak did not make certain legal concessions the insurers demanded – was sufficient to overcome the insurers' Motion to Dismiss Amtrak's claim for attorneys' fees because it stated facts to support a plausible claim that no reasonable insurer would have refused payment of undisputed amounts under the circumstances.

Prestige fails to allege similar facts. Even if the allegations of the Counterclaim are accepted as true, they do not establish that XL Specialty rescinded the Policies and denied coverage for the Loss under circumstances in which no reasonable carrier would have done so. What the allegations in the Counterclaim reveal, even if true, is a reasonable difference of opinion regarding whether admiralty law, and its doctrine of *uberrimae fidei*, applies to the Policies and whether under that law, XL Specialty was entitled to rescind the Policies based on Prestige's misrepresentations and failures to disclose material information regarding its prior losses when XL Specialty underwrote and issued the Policies.

XL Specialty's position that admiralty law and the doctrine of *uberrimae fidei* applies to its claim to rescind the Policies cannot be considered to constitute bad faith. Although Prestige contends that XL Specialty's position was unreasonable, Prestige ignores the fact that the Policies are marine cargo insurance policies, the primary objective of which is to insure goods in maritime commerce and that the Policies contain a choice of law provision calling for application of federal admiralty law to disputes arising under the policy. (See Counterclaim, Ex. A, ECF Dkt. 21-2, at pp. 25-26.) Therefore, based on the choice of law provision of the Policies and established law in the Second Circuit, *see Folksamerica Reinsurance. Co. v. Clean Water of New York, Inc.*, 413 F.3d 307 (2d Cir. 2005), XL Specialty's reliance on federal admiralty law and the doctrine of *uberrimae*

*fidei* was perfectly appropriate.  Therefore, even when the allegations of the Counterclaim are construed in the light most favorable to Prestige, there is, at best, a reasonable difference of opinion between XL Specialty and Prestige as to whether admiralty law applies.  This does not constitute bad faith.

Prestige further contends that XL Specialty unreasonably rescinded the Policies based on material misrepresentations in the underwriting process because XL Specialty had knowledge of a prior left loss that Prestige incurred when it issued at least one of the Policies.  (Counterclaim, ¶ 35.)  XL Specialty disputes that Prestige fully and properly disclosed the prior theft loss in the underwriting process.  Prestige does not allege that the prior theft loss was disclosed in response to XL Specialty's underwriter's repeated requests for information on Prestige's prior losses. Furthermore, Prestige's Answer essentially admits that a second loss it incurred was not disclosed to XL Specialty.  (Second Amended Answer, ECF Dkt. No. 21, ¶ 26.)

At this point, the Court need not decide whether XL Specialty is correct that federal admiralty law applies to its rescission claim and need not decide whether Prestige actually disclosed its prior loss history to XL Specialty.  Even when the allegations of the Counterclaim are interpreted in the light most favorable to Prestige, Prestige has not alleged facts sufficient to establish that XL Specialty has taken a position that no reasonable insurer would have taken under the circumstances.  Prestige does not allege that, as in *Amtrak*, Prestige has some undisputed right to coverage that XL Specialty withheld because Prestige would not make legal concessions it was not obligated to make.  Nor does Prestige allege facts that suggest similar bad faith conduct.  The unique facts that were alleged in *Amtrak*, which allowed Amtrak's claim for attorneys' fees to survive the insurers' motion to dismiss, are not present here.  Prestige alleges only an "arguable difference of opinion between carrier and insured over coverage," not "a showing of 'such bad

faith in denying coverage that no reasonable carrier would under the given facts, be expected to assert it.'" *See O.K. Petroleum*, at *4.  Therefore, the court should dismiss Prestige's claim for attorneys' fees based on bad faith.

Prestige also appears to contend that it can recover attorneys' fees as consequential damages under *Bi-Economy* and *Panasia*.  (Counterclaim, ¶ 64).  However, this position has been rejected repeatedly by New York state and federal courts.  *See 30-40 E. Main St. Bayshore, Inc. v. Republic Franklin Ins. Co.*, 115 A.D.3d 737, 738 (N.Y. App. 2nd Dep't 2014) ("The inability of the plaintiffs to recover an attorney's fee, costs and interest as consequential damages in this affirmative action against their insurer is clear and free from doubt."); *Stein, LLC v. Lawyers Title Ins. Corp.*, 100 A.D. 3d 622, 953 N.Y.S.2d 303, 303-04 (N.Y. App. 2nd Dep't 2012) (stating that *Bi-Econ.* and *Panasia* do not alter the common law rule against recovery of attorneys' fees); *see also Roman Catholic Diocese of Rockville Ctr. v. Gen. Reinsurance Corp.*, No. 16 Civ. 02063, 2016 WL 5793996, at *15 (S.D.N.Y. Sept. 23, 2016).  Accordingly, the court should dismiss Prestige's claim for attorneys' fees as consequential damages because it is contrary to established law.

### E.    Allegations of XL Specialty's Participation in Collateral Litigation Should be Stricken

Finally, the Court should strike allegations in the Counterclaim concerning XL Specialty or its affiliates' participation in other, collateral insurance coverage disputes.  These allegations are impertinent to all properly pled claims and defenses in this litigation.

Allegations regarding XL Specialty's participation in other insurance coverage litigation appear to concern only Prestige's claim for attorneys' fees as consequential damages under *Bi-Economy*.  The allegations apparently are made to support Prestige's contention that attorneys' fees are foreseeable and contemplated consequential damages flowing from XL Specialty's

17

decision to rescind the policies and deny coverage for the Loss.  In particular, Prestige alleges that because XL Specialty has been an "institutional litigant in courts around the country," it "knows that as a natural and probable result of a breach of the Policy (and commencing the instant lawsuit against its policyholder . . .), that Prestige would be compelled to incur fees and costs to enforce its insurance coverage rights."  (Counterclaim, ¶ 75.)  Prestige also alleges that affiliates of XL Specialty were plaintiffs in a coverage dispute litigated in this Court in recent years. (Counterclaim, ¶ 40.)  In support of its argument, Prestige cites the matter of *Travelers Property Casualty Company of America v. Borinken Towing and Salvage LLC*, 16-cv-02652-KPF (S.D.N.Y.) (the "*Borinken* Action"), in which two XL Specialty affiliates were minority participants in a policy primarily underwritten by Travelers Property Casualty Company of America.  (Ex. A hereto, Second Amended Complaint in the *Borinken* Action.)[4]  Based on this one example, Prestige alleges that XL Specialty "has a history of suing a policyholder and seeking to impose a heightened duty under admiralty law and to void a policy *ab initio* based on an alleged misrepresentation by the policyholder."  (Counterclaim, ¶ 40.)

The Court should strike allegations concerning collateral litigation because the claim for attorneys' fees as consequential damages, which the allegations attempt to support, should be dismissed.  (*See supra*, p. 17.)  Once Prestige's claim for attorneys' fees as consequential damages is dismissed, there is no remaining purpose for the allegations concerning XL Specialty's and its affiliates' involvement in collateral insurance coverage litigation.

---

[4]     The Court is permitted to consider the Amended Complaint in the *Borinken* Action in ruling on this motion to dismiss.  Prestige's Counterclaim specifically referred to the claims asserted in that action, but did not attach a copy of the pleadings to its Counterclaim.  Extrinsic documents that are attached to a pleading, or incorporated in it by reference and documents upon which a pleading solely relies that are integral to the pleading may be considered by the Court in ruling on a motion under Rule 12(b)(6).  *See Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007).

However, even if Prestige's claim for attorneys' fees as consequential damages are not dismissed, the allegations regarding collateral coverage litigation should be stricken.  The fact that XL Specialty's affiliates have been involved in litigation of other coverage disputes does not support allowing Prestige to recover attorneys' fees in this action as consequential damages.  If such allegations were sufficient to establish a right to consequential damages, the same could be said of any party that is frequently involved in litigation as a basis for an exception to the American Rule.

In addition, Prestige's reliance on XL Specialty's affiliate's participation in the *Borinken* Action is misguided.  As stated in the Amended Complaint in that case, XL Specialty's affiliates were minority participants in the policy, each taking only a 10% share.  (*See* Ex. A, at ¶¶ 18-19.) Moreover, the claim for rescission that Prestige alludes to in its Counterclaim was one of ten separate causes of action the insurers alleged to support the denial of coverage.  (*Id.* at ¶¶ 60 -64.) Under these circumstances, XL Specialty's affiliates' participation in the *Borinken* Action has no relevance to any claim or defense before the Court in this action.

Finally, XL Specialty will be prejudiced if the allegations regarding collateral litigation are not stricken.  If the allegations remain, Prestige will surely attempt to obtain discovery regarding XL Specialty and its affiliates' participation in other coverage litigation.  In fact, Prestige already has served document requests in an attempt to explore positions taken by XL Specialty or its affiliates in other litigation throughout the United States in the past five years.  Such discovery is highly burdensome because XL Specialty is part of the group of companies under the XL Catlin name and XL Catlin is a global insurance company.  The information Prestige seeks also is immaterial to the issues in this case which concern only the underwriting of the policies XL

Specialty issued to Prestige that are identified in the Complaint.  There is no need to explore positions XL Specialty or its affiliates may have taken in other litigation.

## IV.    CONCLUSION

For all of the foregoing reasons, XL Specialty respectfully requests that the Court dismiss with prejudice Prestige's claim for consequential damages for breach of good faith and fair dealing and its claim for attorneys' fees and costs.  In addition, XL Specialty respectfully requests that the Court strike impertinent allegations in the Second Amended Counterclaim concerning participation by XL Specialty or its affiliates in unrelated, collateral litigation.

Dated: June 5, 2018                                    Respectfully submitted,

**GOLDBERG SEGALLA LLP**

 /s/ Louis H. Kozloff
Todd D. Kremin
711 3rd Avenue, Suite 1900
New York, NY 10017-4013
(646) 292-8700

Louis H. Kozloff
Hillary N. Ladov
1700 Market Street, Suite 1418
Philadelphia, PA 19103
(267) 519-6800

*Attorneys for Plaintiff/Counterclaim-Defendant*
*XL Specialty Insurance Company*