**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

XL SPECIALTY INSURANCE COMPANY,

    Plaintiff,

    v.

PRESTIGE FRAGRANCES, INC.,

    Defendant.

PRESTIGE FRAGRANCES, INC.,

    Counterclaim-Plaintiff,

    v.

XL SPECIALTY INSURANCE COMPANY,

    Counterclaim-Defendant.

Civil Action No.: 1:18-cv-00733

**PLAINTIFF AND
COUNTERCLAIM-DEFENDANT
XL SPECIALTY INSURANCE
COMPANY'S REPLY IN
FURTHER SUPPORT OF
MOTION TO DISMISS CLAIMS
AND STRIKE ALLEGATIONS OF
THE SECOND AMENDED
COUNTERCLAIM**

Dated: July 6, 2018

**GOLDBERG SEGALLA LLP**

Todd D. Kremin
711 3rd Avenue, Suite 1900
New York, NY 10017-4013
(646) 292-8700

Louis H. Kozloff
Hillary N. Ladov
1700 Market Street, Suite 1418
Philadelphia, PA 19103
(267) 519-6800

*Attorneys for Plaintiff/Counterclaim-Defendant*
*XL Specialty Insurance Company*

## Table of Contents

I.   ARGUMENT IN REPLY ............................................................................. 1

   A.   The Court Need Not Decide the Choice of Law Applicable to
       Prestige's Counterclaim in Order to Decide XL Specialty's Motion to
       Dismiss .................................................................................................... 1

   B.   Prestige Has Failed to Sufficiently Allege that the Consequential
       Damages it Seeks Were Contemplated by the Parties When the
       Policies Were Issued .............................................................................. 2

   C.   Prestige's Claim for Attorney's Fees Should be Dismissed ......................... 8

II.   CONCLUSION .................................................................................... 10

## TABLE OF AUTHORITIES

**Cases**                                                                                              **Page**

*Ashcroft v. Iqbal,*
    556 U.S. 662 (U.S. 2009).........................................................................................5

*Bi-Econ. Mkt., Inc. v. Harleysville Ins. Co. of N.Y.,*
    10 N.Y.3d 187 (2008) ................................................................................. *passim*

*In re Cannavest Corp. Sec. Lit.,*
    No. 14 CV 2900, 2018 WL 1633847 (S.D.N.Y. Mar. 31, 2018)............................5

*Cont'l Info. Sys. v. Fed. Ins. Co.,*
    No. 02 CV 4168, 2003 WL 145561 (S.D.N.Y. Jan, 17, 2003).................................3

*County of Orange v. Travelers Indem. Co.,*
    No. 13-CV-06790, 2014 WL 1998240 (S.D.N.Y. May 14, 2014) ...........................8

*Federal Ins. Co. v. PPG Realty, LLC,*
    529 F. Supp. 2d 460 (S.D.N.Y. 2008)...................................................................8

*Fireman's Fund Ins. Co. v. Great American Ins. Co. of N.Y.,*
    822 F.3d 620 (2d Cir. 2016)..................................................................................9

*Folksamerica Reinsurance. Co. v. Clean Water of N.Y., Inc.,*
    413 F.3d 307 (2d Cir. 2005)..................................................................................9

*Goldmark, Inc. v. Catlin Syndicate Ltd.,*
    No. 09-CV-3876, 2011 WL 743568 (E.D.N.Y. Feb. 24, 2011) .............................3

*Harriprashad v. Metro. Prop. & Cas. Ins. Co.,*
    No. 09-CV-3105, 2011 WL 6337699 (E.D.N.Y. Nov. 17, 2011).............................3

*Hold Bros., Inc. v. Hartford Cas. Ins. Co.,*
    357 F. Supp. 2d 651 (S.D.N.Y. 2005)...................................................................3

*Ingersoll Mill. Mach. Co. v. M/V Bodena,*
    829 F.2d 293 (2d Cir. 1987)..................................................................................8

*Kenford Co. v. County of Erie,*
    73 N.Y.2d 312 (1989) .......................................................................................3, 4

*Norfolk Southern R.R. Co. v. Kirby,*
    543 U.S. 14 (2004)........................................................................................1, 2, 9

*O.K. Petroleum Distrib. Corp. v. Travelers Indem. Co.,*
    No. 09 Civ. 10273, 2010 WL 281384 (July 15, 2010) .......................................8, 10

*Ripka v. Safeco Ins.*,
    No. 5:14-CV-1442, 2015 WL 3397961 (N.D.N.Y. May 26, 2015)...........................................5

*Roman Catholic Diocese of Rockville Centre v. General Reinsurance Corp.*,
    No. 16 Civ. 02063, 2016 WL 5793996 (S.D.N.Y. Sept. 23, 2016).......................................3, 8

*Sikarevich Family, L.P. v. Nationwide Mut. Ins. Co.*,
    30 F. Supp. 3d 166 (E.D.N.Y. 2014) ......................................................................................3

*Sukup v. State*,
    19 N.Y.2d 519 (1967) ...............................................................................................................8

## I.      ARGUMENT IN REPLY

XL Specialty Insurance Company ("XL Specialty") hereby submits this Reply in Further

Support of its Motion to Dismiss and to Strike and in response to Prestige Fragrances, Inc.'s

("Prestige") Opposition to XL Specialty's Motion.

### A.      The Court Need Not Decide the Choice of Law Applicable to Prestige's Counterclaim in Order to Decide XL Specialty's Motion to Dismiss

It is unnecessary for the Court to decide at this time whether Prestige's Counterclaim for

breach of contract is governed by federal admiralty law or by New York law.  (Nor is it necessary

to decide the choice of law regarding XL Specialty's Complaint for rescission.) With respect to

the issues before the Court in the Motion to Dismiss, XL Specialty acknowledges that New York

law should be applied to Prestige's claim for consequential damages (XL Specialty Memo., at 6,

7 n.3) and that federal admiralty law and New York law regarding Prestige's claim for attorney's

fees are essentially identical.  (*Id.* at 12-14.)

With that being said, Prestige's argument that federal admiralty law does not apply to the

Counterclaim or to XL Specialty's claim for rescission ignores two important factors that will be

relevant to the Court's eventual determination of choice of law.  First, Prestige ignores that the XL

Specialty Policies contain a choice of law provision by which the parties agreed that federal

admiralty law and practice applies to all disputes arising under the policies, unless federal

admiralty law on the topic in dispute does not exist.  Second, Prestige relies on cases that pre-date

the U.S. Supreme Court's 2004 decision in *Norfolk Southern R.R. Co. v. Kirby*, 543 U.S. 14 (2004),

which imposes a framework for analyzing the choice of law issue in this case that was not

employed in the pre-*Kirby* decisions on which Prestige relies.  In *Kirby*, the Supreme Court held

that admiralty jurisdiction and law applied to a contract dispute arising out of an inland train

accident because the primary objective of the contract at issue was the transportation of goods in

maritime commerce.  *See Kirby*, 543 U.S. at 23-29.  Under the *Kirby* framework, XL Specialty will demonstrate that the primary objective of the XL Specialty marine cargo insurance policies was to insure Prestige's goods involved in maritime commerce.

Therefore, when the Court decides the choice of law issues in this matter, with the benefit of facts relevant to the analysis and full briefing of the applicable case law, the Court should conclude that federal admiralty law applies.

### B.     Prestige Has Failed to Sufficiently Allege that the Consequential Damages it Seeks Were Contemplated by the Parties When the Policies Were Issued

Prestige devotes a considerable amount of its argument to the premise that consequential damages can be recovered for an insurer's breach of implied duties of good faith and fair dealing and in attempting to demonstrate that its Counterclaim includes allegations of bad faith conduct by XL Specialty.  (*See, e.g.,* Prestige Memo., at 2-3 and 6.)  However, Prestige cannot avoid dismissal of its claim for consequential damages with allegations of alleged bad faith conduct alone.  Rather, Prestige must also assert allegations sufficient to establish a plausible claim that the consequential damages it claims were a natural and probable result of the denial of coverage, were foreseeable, and were within the reasonable contemplation of the parties at the time the policies were issued.  On this point, Prestige has failed to state a plausible claim for relief.

XL Specialty's Motion does not contest the overarching legal basis for Prestige's claim under the New York Court of Appeals' *Bi-Economy* decision.  Rather, the Motion focuses on crucial elements of an insured's claim for consequential damages against its insurer.  Specifically, Prestige's claim for consequential damages should be dismissed because Prestige has failed to sufficiently allege that the consequential damages it claims: (1) were a natural and probable consequence of the breach of contract; (2) were or should have been foreseeable by the parties to the contract; and (3) were reasonably contemplated by the contracting parties at the time the

insurance policy was issued.  (XL Specialty Memo., at 7 (citing *Bi-Econ. Mkt., Inc. v. Harleysville Ins. Co. of N.Y.*, 10 N.Y.3d 187, 192 (2008) ("*Bi-Economy*")).)  In particular, Prestige has failed to sufficiently allege that the nature of the coverage provided by the XL Specialty Policies makes the type of damages Prestige claims ones that XL Specialty "fairly may be supposed to have assumed consciously, or to have warranted the plaintiff reasonably to suppose that it assumed, when the contract was made."  *See Bi-Economy*, 10 N.Y.3d at 193 (quoting *Kenford Co. v. County of Erie*, 73 N.Y.2d 312, 319 (1989))[1]; *see also Cont'l Info. Sys. v. Fed. Ins. Co.*, No. 02 CV 4168, 2003 WL 145561, at *4 (S.D.N.Y. Jan, 17, 2003).

Prestige cannot dispute that under *Bi-Economy*, it must plead facts sufficient to establish these three elements to assert a plausible claim for consequential damages.  Cases following *Bi-Economy*, including those relied on by Prestige, state that consequential damages must be those that are contemplated by the parties when the contract was formed and reasonably foreseeable given the nature of the coverage provided by the policy.  *See Roman Catholic Diocese of Rockville Centre v. General Reinsurance Corp.*, No. 16 Civ. 02063, 2016 WL 5793996, at *4 (S.D.N.Y. Sept. 23, 2016); *Sikarevich Family, L.P. v. Nationwide Mut. Ins. Co.*, 30 F. Supp. 3d 166, 173 (E.D.N.Y. 2014); *Harriprashad v. Metro. Prop. & Cas. Ins. Co.*, No. 09-CV-3105, 2011 WL 6337699, at *2 (E.D.N.Y. Nov. 17, 2011); *Goldmark, Inc. v. Catlin Syndicate Ltd.*, No. 09-CV-

---

[1] Prestige suggests that XL Specialty wrongly relies on *Kenford Co. v. County of Erie*.  (Prestige Memo., at 10-11 (referring to an unnamed "pre-*Bi-Economy* case" that did not involve an insurance coverage dispute and involved a claim for damages related to the depreciation of land in the periphery of a proposed stadium cite.)  Prestige is referring to *Kenford*, which is "the leading case in New York on the availability, in general, of consequential damages in breach of contract actions."  *See Hold Bros., Inc. v. Hartford Cas. Ins. Co.*, 357 F. Supp. 2d 651, 656 (S.D.N.Y. 2005).  Therefore, *Kenford* clearly is applicable.  Furthermore, Prestige ignores that XL Specialty cited *Kenford* as it was quoted in *Bi-Economy* as the basis for the requirement that consequential damages be those that the defendant assumed when the contract was made.  (XL Specialty Memo., at 7.)

3

3876, 2011 WL 743568, at *3 (E.D.N.Y. Feb. 24, 2011).  Furthermore, these necessary elements are not unique to a claim for consequential damages in an insurance contract.  They are elements established by hornbook law that apply to any claim for consequential damages based on breach of contract.  *See Kenford Co.*, 73 N.Y.2d at 319 (citing, *inter alia*, *Hadley v. Baxendale*, 9 Exch. 341, 156 Eng. Rep. 145 (1845) and McCormick, Damages, § 138, at 562).  In *Bi-Economy*, the New York Court of Appeals merely confirmed that these elements also apply to an insured's claim for consequential damages for breach of good faith and fair dealing by an insurer.  *See Bi-Economy*, at 192.

Prestige has failed to state a plausible claim for consequential damages because it has not sufficiently alleged these necessary elements.  Recovery of consequential damages under *Bi-Economy* and hornbook law requires establishing that "the nature, purpose and particular circumstances of the contract known to the parties" demonstrates that the consequential damages claimed were reasonably contemplated by the parties.  *Bi-Economy*, at 193.  However, when referring to the nature of the coverage provided by the XL Specialty Policies, Prestige alleges only that "the very purpose of the Warehouse Endorsement would have made XL [Specialty] aware that if it repudiated its obligations under the contract . . . , then it would need to respond to damages for the impact to Prestige's business operations."  (Counterclaim, ¶ 47.)  Beyond this conclusory allegation, Prestige does not allege why, based on the "purpose" of the Warehouse Endorsement alone, XL Specialty would have reasonably contemplated or foreseen that Prestige would incur the type of damages it claims if coverage was not provided.  Perhaps in recognition of this deficiency in its pleading, Prestige states, "[a]s set forth in the Counterclaim, XL foresaw or should have foreseen that Prestige needs inventory to conduct normal business operations, which is why it needed insurance coverage for loss of warehoused inventory."  (Prestige Memo., at 8.)  Prestige

4

does not provide a citation for where in the Counterclaim this allegation is made and no such allegation can be found.  Thus, Prestige's Counterclaim contains only a "naked assertion devoid of further factual enhancement," *see In re Cannavest Corp. Sec. Lit.*, No. 14 CV 2900, 2018 WL 1633847, at *5 (S.D.N.Y. Mar. 31, 2018) (Gardephe, J.) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (U.S. 2009)), that the nature of the coverage provided in the XL Specialty Policies justifies the type of consequential damages Prestige claims.  The Court should not assume that these essential facts have been pled sufficiently here.

Furthermore, there is nothing about the nature of the coverage provided in the XL Specialty Policies that makes the alleged ancillary losses in Prestige's business operations reasonably foreseeable or contemplated by the parties.  The XL Specialty Policies provide coverage for loss or damage to Prestige's goods.  Unlike the business interruption coverage at issue in *Bi-Economy*, the coverage provided by the XL Specialty Policies is not intended to "indemnify the insured against losses arising from the inability to continue normal business operations and functions" or "provide financial support necessary to sustain business operations."  *See Bi-Economy*, 10 N.Y.3d at 194-95.  Therefore, whereas consequential damage to the insured's business was foreseeable and naturally flowed from the denial of business interruption coverage in *Bi-Economy*, the "very purpose" of the coverage provided by the XL Specialty Policies does not make the ancillary losses to Prestige's business natural and probable, foreseeable or reasonably within XL Specialty's contemplation when it issued the policies.  *See Ripka v. Safeco Ins.*, No. 5:14-CV-1442, 2015 WL 3397961, at * 4-5 (N.D.N.Y. May 26, 2015) (granting motion to dismiss claim for consequential damages).[2]

---

[2]  Prestige wrongly contends that XL Specialty argues that consequential damages are limited to claims involving business interruption coverage.  (Prestige Memo., at 7.)  XL Specialty makes no such argument.  Rather, XL Specialty argues that, as stated in *Bi-Economy*, business interruption

Instead of explaining why the type of coverage provided in the XL Specialty Policies makes Prestige's alleged losses reasonably foreseeable, Prestige alleges that the nature of its business makes consequential damages foreseeable.  Prestige alleges that because it is a small, family owned business, XL Specialty should have anticipated that Prestige would suffer ancillary losses in its business operations if coverage was denied.  (Prestige Memo., at 6-7; Counterclaim, ¶¶ 47, 76.)  To support this contention, Prestige incorrectly states that the Court of Appeals' holding in *Bi-Economy* was based on the "nature of the policyholder's business." (Prestige Memo., at 7.)  The actual holding in *Bi-Economy* allowing recovery of consequential damages was based on the nature and purpose of the insurance contract, *not the nature of the insured's business*.  *See Bi-Economy*, at 196.  The Court's holding was as follows:

> Therefore, *in light of the nature and purpose of the insurance contract at issue*, as well as Bi-Economy's allegations that Harleysville breached its duty to act in good faith, we hold that Bi-Economy's claim for consequential damages including the demise of its business, was reasonably foreseeable and contemplated by the parties.

*Id.* (emphasis added).

Furthermore, Prestige suggests that *Bi-Economy* has more far-reaching impact than is warranted.  For example, Prestige incorrectly suggests that *Bi-Economy* would allow for recovery of any type of consequential damages in all claims involving first party insurance coverage because first party insurance is intended to "insure that "the [policyholder] had the financial support necessary to sustain its business operation in the event that disaster occurred." (Prestige Memo., at 5 (citing *Bi-Economy*, at 194).)  However, the Court of Appeals made no such broad-sweeping

---

coverage is an example of coverage from which consequential losses to the insured's business naturally flow when an insurer denies coverage for a business interruption claim.  That is not to say that there are not other kinds of consequential damages that naturally flow from a denial of other forms of coverage.  However, Prestige has not sufficiently alleged that the consequential damages it claims naturally flow from a denial of the type of coverage provided by the XL Specialty Policies.

6

statement about first party insurance coverage.  The statement quoted by Prestige specifically referred to business interruption coverage:

> The purpose served *by business interruption coverage* cannot be clearer – to ensure that Bi-Economy had the financial support necessary to sustain its business operation in the event disaster occurred.

*See Bi-Economy*, at 194 (emphasis added).  The Court of Appeals could not have been more clear that this statement pertains to the intent of the *business interruption coverage* at issue in the *Bi-Economy* case, not all first party coverage.  Similarly, Prestige incorrectly suggests that the Court of Appeals allowed for the recovery of consequential damages based on the insurer's denial of property damage coverage.  (Prestige Memo., at 7-8.)  The Court's holding clearly tied the recovery of consequential damages for losses to the insured's business to the denial of business interruption coverage.  *Bi-Economy*, at 194-96.

Therefore, Prestige is left with its allegations that XL Specialty could have foreseen or contemplated the losses Prestige alleges because of marketing and informational statements explaining that XL's claims team "is ready to resolve your claim, so you can keep moving your business forward" and "get [the insured] back to business as soon as possible." (Counterclaim, ¶¶ 46, 76.)  XL Specialty's Memorandum in support of its Motion discusses why these marketing and promotional statements are not part of the XL Specialty Policies and do not demonstrate that the consequential damages Prestige seeks naturally flow from the denial of coverage or were contemplated by the parties based on the nature of the coverage provided in the XL Specialty Policies.  (XL Specialty Memo., at 11-12.)

Accordingly, Prestige has failed to sufficiently plead the necessary elements of its claim for consequential damages under *Bi-Economy*.  The Court should dismiss this claim with prejudice.

### C.        Prestige's Claim for Attorney's Fees Should be Dismissed

Courts in this District have frequently disposed of an insured's invalid or insufficiently pled claim for attorney's fees on motions to dismiss. *See Roman Catholic Diocese of Rockville Centre*, at \*5; *County of Orange v. Travelers Indem. Co.*, No. 13-CV-06790, 2014 WL 1998240, at \*3-4 (S.D.N.Y. May 14, 2014); *O.K. Petroleum Distrib. Corp. v. Travelers Indem. Co.*, No. 09 Civ. 10273, 2010 WL 2813804, at \*4 (July 15, 2010).[3]  The Court should do the same here.

Under either federal admiralty law or New York law, Prestige can recover attorney's fees in its breach of contract claim only if it pleads and establishes that XL Specialty's denial of coverage was made in bad faith. *See Ingersoll Mill. Mach. Co. v. M/V Bodena*, 829 F.2d 293, 309 (2d Cir. 1987) (federal admiralty law); *Sukup v. State*, 19 N.Y.2d 519, 522 (1967) (New York law). Under both admiralty law and New York law, the bar for establishing bad faith is high. Under admiralty law, a difference of opinion between insurer and insured about the availability of coverage does not constitute bad faith. *See Ingersoll Mill. Mach. Co.*, 829 F.2d at 309; *see also Federal Ins. Co. v. PPG Realty, LLC*, 529 F. Supp. 2d 460, 465 (S.D.N.Y. 2008) (finding no bad faith where the insurer's "distinctly unpersuasive" and "absurd" arguments were not "so entirely without color to be indicative of bad faith."). Under New York law, a bad faith denial justifying an award of attorney's fees can be found only if the insurer denied coverage on grounds that "no reasonable carrier would, under the given facts, be expected to assert." *Sukup*, 19 N.Y.2d at 465. Prestige has not alleged and cannot allege facts sufficient to clear this high bar.

The crux of Prestige's Counterclaim is that XL Specialty breached its obligation to provide coverage for the July 4, 2017 loss by rescinding the Policies under the admiralty law doctrine of

---

[3]  These cases involve dismissal of claims for attorney's fees as damages for a bad faith denial or coverage or as consequential damages for breach of good faith and fair dealing under *Bi-Economy*, both of which are asserted in Prestige's Counterclaim.

*uberrimae fidei*.  Although Prestige also alleges that XL Specialty delayed in providing coverage for its claim and denied coverage after Prestige had made efforts to support its claim, these allegations are immaterial to its claim for attorney's fees based on a bad faith breach of contract. As *Ingersoll* and *Sukup* demonstrate, under admiralty law or New York law, bad faith breach of contract for which attorney's fees could be recovered depends on the reasonableness of the grounds for the insurer's denial of coverage, not the way in which it made its decision.  Therefore, the merits of XL Specialty's decision to rescind the Policies is the only relevant issue in Prestige's claim for attorney's fees based on bad faith breach of contract.

When the Court considers the terms of the XL Specialty Policies and the applicable law, Prestige cannot state a plausible claim that XL Specialty's decision to rescind the Policies based on *uberrimae fidei* was so unreasonable that no insurer would have taken this position under the circumstances.  The Court should not credit Prestige's contention that XL Specialty's reliance on admiralty law was in bad faith because it is contrary to controlling law.  Prestige's argument ignores the XL Specialty Policies' choice of law provision requiring application of federal admiralty law.   And it is premised on case law that pre-dates the U.S. Supreme Court's transformative decision in *Kirby*, and Second Circuit Court of Appeals decisions following *Kirby*, which hold that admiralty law applies to insurance coverage disputes when the primary or principal objective of the contract at issue is the establishment of a policy of marine insurance.  *See Fireman's Fund Ins. Co. v. Great American Ins. Co. of N.Y.*, 822 F.3d 620, 632-34 (2d Cir. 2016); *Folksamerica Reinsurance. Co. v. Clean Water of N.Y., Inc.*, 413 F.3d 307, 311-15 (2d Cir. 2005). The XL Specialty Policies have such an objective.

Prestige alleges only an "arguable difference of opinion between carrier and insured over coverage," not "a showing of 'such bad faith in denying coverage that no reasonable carrier would

under the given facts, be expected to assert it.'" *See O.K. Petroleum Dist. Corp.*, at \*4 (granting motion to dismiss attorney's fees claim because plaintiff failed to allege facts sufficient to state a plausible claim of bad faith breach of contract).  Therefore, the court should dismiss Prestige's claim for attorney's fees based on bad faith breach of contract.

## II.     CONCLUSION

For the foregoing reasons and those set forth in XL Specialty's Memorandum in Support of its Motion to Dismiss and Strike, XL Specialty respectfully requests that the Court dismiss with prejudice Prestige's claims for consequential damages and attorney's fees, and strike impertinent allegations in the Second Amended Counterclaim concerning XL Specialty's or its affiliates' participation in unrelated, collateral litigation.[4]

Dated: July 6, 2018                             Respectfully submitted,

**GOLDBERG SEGALLA LLP**

 /s/ Louis H. Kozloff
Todd D. Kremin
711 3rd Avenue, Suite 1900
New York, NY 10017-4013
(646) 292-8700

Louis H. Kozloff
Hillary N. Ladov
1700 Market Street, Suite 1418
Philadelphia, PA 19103
(267) 519-6800

*Attorneys for Plaintiff/Counterclaim-Defendant*
*XL Specialty Insurance Company*

---

[4]  XL Specialty stands on its arguments in support of its Motion to Strike set forth in its initial Memorandum.  (XL Specialty Memo., at 17-20.)

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 6, 2018, Plaintiff/Counterclaim-Defendant XL Specialty Insurance Company's Reply in Further Support of its Motion to Dismiss Claims and Strike Allegations of the Second Amended Counterclaim was served by U.S. Mail and email upon counsel of record listed below:

Joshua Gold
Dennis J. Nolan
Anderson Kill P.C.
1251 Avenue of the Americas
New York, NY 10020
jgold@andersonkill.com
dnolan@andersonkill.com

/s/Louis H. Kozloff
Louis H. Kozloff