UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

XL SPECIALTY INSURANCE COMPANY,

　　　　　Plaintiff,

　　v.

PRESTIGE FRAGRANCES, INC.,

　　　　　Defendant.

Civil Action No. 1:18-cv-0733-PGG

---

PRESTIGE FRAGRANCES, INC.,

　　　　　Counterclaim-Plaintiff,

　　v.

XL SPECIALTY INSURANCE COMPANY,

　　　　　Counterclaim-Defendant.

---

**DEFENDANT/COUNTERCLAIM-PLAINTIFF PRESTIGE FRAGRANCES, INC.'S
MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF/ COUNTERCLAIM-
DEFENDANT XL SPECIALTY INSURANCE COMPANY'S MOTION TO DISMISS
CLAIMS AND STRIKE ALLEGATIONS OF THE SECOND AMENDED
COUNTERCLAIM**

Joshua Gold
Dennis J. Nolan
**ANDERSON KILL, P.C.**
1251 Avenue of the Americas
New York, NY 10020
Telephone: 212-278-1000

*Attorneys for Defendant/Counterclaim-
Plaintiff Prestige Fragrances, Inc.*

## TABLE OF CONTENTS

Page

SUMMARY OF ARGUMENT ............................................................................1

ARGUMENT ...............................................................................................3

I.    APPLICABLE LEGAL STANDARD AND RULES OF CONSTRUCTION ..................3

II.   PRESTIGE PROPERLY PLED A BREACH OF CONTRACT ACTION WITH
      AN ATTENDANT REQUEST FOR CONSEQUENTIAL DAMAGES............................4

      A.    New York Law Permits Prestige to Seek Consequential Damages in
            Connection with Its Breach of Contract Claim......................................... 4

      B.    Federal Courts Applying New York Law Have Denied Motions to Dismiss
            Requests for Consequential Damages in Breach of Contract Claims.................. 11

      C.    Admiralty Law Is Irrelevant to this Action and to the XL Motion....................... 13

      D.    Prestige Should Be Awarded Attorney Fees for an Improper Coverage
            Denial........................................................................................... 16

III.  The Request To Strike Allegations as Impertinent is Improper and Baseless..................20

CONCLUSION...........................................................................................21

i

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re 2TheMart.com, Inc. Securities Litigation*,
  114 F.Supp.2d 955 (C.D. Cal. 2000) ..................................................21

*30-40 E. Main St. Bayshore, Inc. v. Republic Franklin Ins. Co.*,
  115 A.D.3d 737 (2d Dept. 2014) ....................................................19

*Am. Home Assur. Co. v. Merck & Co.*,
  329 F. Supp. 2d 436 (S.D.N.Y. 2004)..............................................14

*Am. Home Assurance Co. v. Masters' Ships Mgmt. S.A.*,
  423 F. Supp. 2d 193 (S.D.N.Y. 2007)..............................................18

*Am. Nat'l Fire Ins. Co. v. Kenealy*,
  72 F.3d 264 (2d Cir. 1995)............................................................18

*AMTRAK v. Arch Specialty Ins. Co.*,
  124 F. Supp. 3d 264 (S.D.N.Y. 2015), *aff'd in part, vacated in part on other
  grounds*, 661 F. App'x 10 (2d Cir. 2016) .....................................7, 16, 17

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)......................................................................4

*Atlantic Mut. Ins. Co. v. Balfour MacLaine Int'l*,
  85 F.3d 68 (2d Cir. 1996)..............................................................14

*Atlantic Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd.*,
  968 F.2d 196 (2d Cir. 1992)...........................................................14

*In re Balfour MacLaine Int'l Ltd.*,
  873 F. Supp. 862 (S.D.N.Y. 1995) ................................................15

*Bi-Economy Mkt., Inc. v. Harleysville Ins. Co. of N.Y.*,
  10 N.Y.3d 187 (N.Y. 2008) ....................................................*passim*

*Chaffee v. Farmers New Century Ins. Co.*,
  No. 5:04-CV-1493, 2008 U.S. Dist. LEXIS 74334 (N.D.N.Y. Sept. 24, 2008).....................11

*Chernish v. Mass. Mut. Life Ins. Co.*,
  No. 5:08-CV-0957, 2009 U.S. Dist. LEXIS 9617 (N.D.N.Y. Feb. 10, 2009) .......................11

*Cont'l Info. Sys. v. Fed. Ins. Co.*,
  No. 02 Civ. 4168, 2003 U.S. Dist. LEXIS 682 (S.D.N.Y. Jan. 17, 2003)...............................11

docs-100018747.4

**TABLE OF AUTHORITIES**
*(continued)*

Page(s)

*County of Orange v. Travelers Indem. Co.,*
   No. 13 Civ. 6790, 2014 U.S. Dist. LEXIS 66451 (S.D.N.Y. May 14, 2014).............................19

*Fed. Ins. Co. v. PGG Realty LLC,*
   529 F. Supp. 2d 460 (S.D.N.Y. 2008)..............................................................................................19

*Folksamerica Reinsurance Co. v. Clean Water of New York, Inc.,*
   413 F.3d 307 (2d Cir. 2005)................................................................................................13, 14

*Goldmark, Inc. v. Catlin Syndicate Ltd.,*
   No. 09-CV-3876, 2011 U.S. Dist. LEXIS 18197 (E.D.N.Y. Feb. 24, 2011)...............11, 12, 13

*Handy & Harman v. Am. Int'l Grp., Inc.,*
   No. 0115666/2007, 2008 N.Y. Misc. LEXIS 7522 (N.Y. Sup. Ct., N.Y. Cty.
   Aug. 26, 2008) ...................................................................................................................11, 12

*Harriprashad v. Metropolitan Property & Casualty Insurance Co.,*
   No. 09-CV-3105, 2011 U.S. Dist. LEXIS 145573 (E.D.N.Y. Nov. 17, 2011).........................12

*Hillcrea Exp. & Imp. Co. v. Universal Ins. Co.,*
   110 F. Supp. 204 (S.D.N.Y. 1953), aff'd, 212 F.2d 206 (2d Cir. 1954)..................................15

*Hold Bros v. Hartford Cas. Ins. Co.,*
   357 F. Supp. 2d 651 (S.D.N.Y. 2005)....................................................................................10

*Howard Stores Corp. v. Foremost Ins. Co.,*
   82 A.D.2d 398 (1st Dept. 1981).............................................................................................11

*The Ingersoll Milling Mach. Co. v. M/V Bodena,*
   829 F.2d 293 (2nd Cir. 1987)................................................................................................18

*Int'l Shipping Co., S.A. v. Hydra Offshore,*
   675 F. Supp.146 (S.D.N.Y. 1987) .........................................................................................17

*Jane St. Holding LLC v. Aspen Am. Ins. Co.,*
   No. 13 Civ. 2291, 2013 U.S. Dist. LEXIS 182110 (S.D.N.Y. Jan. 2, 2014)...........................19

*Jessica Howard Ltd. v. M/V Sky Light,*
   No. 00 Civ. 6319, 2002 U.S. Dist. LEXIS 3623 (S.D.N.Y., March 5, 2002),
   vacated and remanded on other grounds by, 316 F.3d 165 (2d Cir. 2003).............................15

*Luvi Trucking, Inc. v. Sea-land Service, Inc.,*
   650 F.2d 371 (1st Cir. 1981)...................................................................................................15

### TABLE OF AUTHORITIES
*(continued)*

Page(s)

*Moore-McCormack Lines, Inc. v. Int'l Terminal Operating Co.,*
  619 F. Supp. 1406 (S.D.N.Y. 1985)..................................................................................15

*N.Y. Marine & Gen. Ins. Co. v. Tradeline (L.L.C.),*
  98 Civ. 7840, 1999 U.S. Dist. LEXIS 20022 (S.D.N.Y. Dec. 29, 1999)................................18

*Naias Marine S.A. v. Trans Pac. Carriers Co.,*
  No. 07 Civ. 10640, 2008 U.S. Dist. LEXIS 2438 (S.D.N.Y. Jan. 10, 2008)...........................17

*New York Univ. v. Cont'l Ins. Co.,*
  87 N.Y.2d 308 (1995) ..................................................................................................19

*Niesenbaum v. AXA Equit. Life Ins. Co.,*
  No. 600412/2013, 2015 N.Y. Misc. LEXIS 4928 (N.Y. Supr., Nassau Cty.,
  March 10, 2015)..................................................................................................11, 17

*O.K. Petroleum Distrib. Corp. v. Travelers Indem. Co.,*
  No. 09 Civ. 10273, 2010 U.S. Dist. LEXIS 71465 (S.D.N.Y. July 15, 2010) ........................11

*Panasia Estates, Inc. v. Hudson Ins. Co.,*
  10 N.Y.3d 200 (N.Y. 2008) ....................................................................................*passim*

*Paul Marsh, Inc. v. Edward A. Goodman Co.,*
  612 F. Supp. 635 (S.D.N.Y. 1985) ..................................................................................14

*Pillsbury Flour Mills Co. v. Interlake S. S. Co.,*
  40 F.2d 439 (2d Cir. 1930)............................................................................................14

*Protection Mut. Ins. Co. v. Silgan Plastics Corp.,*
  No. 96 Civ. 4493, NRB, 2000 U.S. Dist. LEXIS 12927 (S.D.N.Y. Sept. 7,
  2000) ......................................................................................................................18

*Richman v. Harleysville Worcester Ins. Co.,*
  No. 600467/06, 2010 N.Y. Misc. LEXIS 6832 (N.Y. Supr., N.Y. Cty., Nov. 1,
  2010) ......................................................................................................................18

*Roman Catholic Archdiocese of Rockville Centre v. General Reinsurance Corp.,*
  No. 16 Civ. 02063, 2016 U.S. Dist. LEXIS 133724 (S.D.N.Y. Sept. 13, 2016) ............*passim*

*Sikarevich Family, L.P., v. Nationwide Mut. Ins. Co.,*
  No. 13-cv-5564, 2014 U.S. Dist. LEXIS 92254 (E.D.N.Y. July 3, 2014)....................3, 11, 12

*Stein, LLC v. Lawyers Title Ins. Corp.,*
  100 A.D.3d 622 (2d Dept. 2012) ..................................................................................19

## TABLE OF AUTHORITIES
*(continued)*

**Page(s)**

*Sukup v. State,*
   19 N.Y.2d 519 (N.Y. 1967) .................................................................................17, 18, 19

*United States CFTC v. Byrnes,*
   No. 13-CV-1174, 2014 U.S. Dist. LEXIS 142649 (S.D.N.Y. Sept. 30, 2014)..........................4

*Whittlestone, Inc. v. Handi-Craft Co.,*
   618 F.3d 970 (9th Cir. 2010) .........................................................................................20

**Statutes**

Fed. Rules of Civil Procedure 12(b)(6)...............................................................................3, 12

Federal Rules of Civil Procedure Rule 12(f) ......................................................................20, 21

**Other Authorities**

1 *Benedict on Admiralty* § 184 n.1 ....................................................................................15

Defendant/Counterclaim-Plaintiff Prestige Fragrances, Inc. ("Prestige") submits this Memorandum of Law in Opposition to Plaintiff/Counterclaim-Defendant XL Specialty Insurance Company's ("XL") Motion to Dismiss Claims and Strike Allegations of the Second Amended Counterclaim[1] (the "XL Motion").

## SUMMARY OF ARGUMENT

Prestige respectfully submits that the XL Motion should be denied because: (1) the Court of Appeals for the State of New York has established that consequential damages are allowed, if proved, as a remedy for an insurance company's breach of its duty of good faith and fair dealing inherent in every contract; and (2) Prestige's allegations satisfy the requirements of notice pleading by setting forth facts which, if proved, demonstrate that Prestige is entitled to such relief based on XL's conduct.  Prestige's allegations are more than adequate to satisfy the notice pleading requirement that it state the general and specific bases for the relief it seeks, including consequential damages.  The XL Motion demands that Prestige set forth in the counterclaims all information needed to prove that Prestige is entitled to judgment today, but XL can seek such information during the discovery process, which is underway.  XL's attempt to hold Prestige's claim to the standards of proof, rather than pleading, should be denied.

As a threshold matter, XL has not asked the Court to dismiss either count of Prestige's Counterclaim: (a) declaratory relief; or (b) breach of contract.  Instead, XL asks that the Court dismiss Prestige's demand for consequential damages as a remedy for the breach of the duty of good faith and fair dealing and further asks – without citation to a single case – that the Court strike factual allegations XL views as "impertinent".

---

[1]   Prestige's Second Amended Counterclaim (ECF No. 21) is referred to herein as the "Counterclaim".

Prestige's right to seek consequential damages is beyond dispute. Prestige's complaint states a plausible claim for relief based on well-pleaded facts that, if proved, establish a breach of the implied duty of good faith and fair dealing, entitling Prestige to consequential damages and to attorney fees. In *Bi-Economy Mkt., Inc. v. Harleysville Ins. Co. of N.Y.*, 10 N.Y.3d 187 (N.Y. 2008) ("*Bi-Economy*") and *Panasia Estates, Inc. v. Hudson Ins. Co.*, 10 N.Y.3d 200 (N.Y. 2008) ("*Panasia*"), the Court of Appeals established unequivocally that a policyholder has the right to seek consequential damages where the insurance company breaches the terms of an insurance policy in a manner that violates the insurance company's duty of good faith and fair dealing that is implied in every contract. *Id.*

Moreover, Prestige's request for consequential damages was properly and sufficiently pleaded. The XL Motion itself establishes XL's understanding of the claim and the relief sought, as the XL Motion recites pages worth of Prestige's allegations. *See* XL Motion at 2 – 5, 18. While XL correctly understands the nature and facts of Prestige's well-pleaded facts, XL is incorrect that Prestige's well-pleaded claim is not legally sufficient. Accordingly, the XL Motion should be denied.

The following allegations not only make clear the basis and nature of Prestige's demand for purposes of notice pleading, but also set forth facts that explain why Prestige's claim is legally valid and that Prestige is entitled to seek consequential damages:

- XL belatedly, improperly and unreasonably attempted to invoke admiralty law rules to deny Prestige's insurance claim for warehouse coverage even though XL knew the insurance claim had nothing to do with maritime interests or admiralty law. *See, e.g.*, Counterclaim ¶¶ 34, 37 – 40, 66, 68.

- XL improperly denied insurance coverage and imposed a baseless argument that Prestige's loss history was material when XL knowingly sold Prestige insurance—repeatedly—without receipt of "loss runs" and with full knowledge that Prestige did not maintain such information. *See, e.g.*, Counterclaim ¶¶ 35, 38, 41, 45, 69 - 71.

- XL's improper coverage denial deprived Prestige of funds needed for the replacement of stock and inventory in order to fill contracts and resume normal business operations. *See, e.g.*, Counterclaim ¶¶ 44, 73.

- Prestige purchased the coverage to provide protection for the lifeblood of its business and peace of mind. *See, e.g.*, Counterclaim ¶¶ 16, 17, 36, 44, 46, 47.

- XL delayed seven months before it sought recission, despite having knowledge of its purported basis to do so, and despite promise to adjust a claim quickly to get a policyholder back to business as soon as possible."

- No insurance proceeds were advanced to Prestige despite diverting precious resources to the claim adjustment process, and Prestige was compelled to pursue its coverage rights through the instant action, which has given rise to the considerable financial burden of attorney fees. Counterclaim ¶¶ 33, 45, 72, 76.

These factual allegations set forth a plausible claim for consequential damages by illustrating XL's breach of its duty of good faith and fair dealing. If XL sincerely believes these facts to be untrue, it should utilize the limited time available for discovery to obtain whatever information XL believes it requires about the basis of Prestige's request for consequential damages.

## ARGUMENT

### I.   APPLICABLE LEGAL STANDARD AND RULES OF CONSTRUCTION

In deciding a motion to dismiss under Rule 12(b)(6), a court must accept as true all well-pleaded factual allegations and draw all inferences in the claimant's favor. *Sikarevich Family, L.P., v. Nationwide Mut. Ins. Co.*, No. 13-cv-5564, 2014 U.S. Dist. LEXIS 92254, at *5 (E.D.N.Y. July 3, 2014). A complaint "must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Id.* (*citing Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A claim is facially plausible when a claimant "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Determining whether a pleading states a plausible claim is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft*, 556 U.S. at 679. "Plausibility... depends on a host of considerations: the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render [the] plaintiff's inferences unreasonable." *United States CFTC v. Byrnes*, No. 13-CV-1174, 2014 U.S. Dist. LEXIS 142649, at *7 (S.D.N.Y. Sept. 30, 2014).

Because Prestige's request for consequential damages as a basis for relief for its breach of contract claim is facially plausible, the XL Motion is without merit. Furthermore, motions to strike are disfavored. The allegations to which XL takes exception are pertinent to Prestige's claims concerning good faith and fair dealing and also provide the factual context of XL's knowledge of the litigation burdens imposed upon a policyholder when XL seeks improperly to rescind insurance protection it has previously sold and promised.

## II.   PRESTIGE PROPERLY PLED A BREACH OF CONTRACT ACTION WITH AN ATTENDANT REQUEST FOR CONSEQUENTIAL DAMAGES.

Prestige's request for consequential damages as relief for XL's breach of the duty of good faith and fair dealing is plausible on its face. XL's contentions to the contrary reveal a misunderstanding of *Bi-Economy*. Moreover, the cases XL cites to support its position actually demonstrate that Prestige's consequential damages claims ought to stand at this stage.

### A.   New York Law Permits Prestige to Seek Consequential Damages in Connection with Its Breach of Contract Claim.

Under New York law, "[i]t is well settled that in breach of contact actions 'the nonbreaching party may recover general damages which are the natural and probable consequence of the breach." *Bi-Economy*, 10 N.Y.3d at 192 (citations omitted). Contrary to

XL's misguided argument, under the Court of Appeals decisions in *Bi-Economy* and *Panasia*, when an insurance company breaches its duty of good faith and fair dealing, it is liable for the consequences of its actions, including for damages that were foreseeable from that breach. *Id.* (citations omitted).

The right to seek consequential damages arises from the breach of good faith and fair dealing which is implied in every insurance contract. In *Bi-Economy*, the Court of Appeals held: "[A]s in all contracts, implicit in contracts of insurance is a covenant of good faith and fair dealing, such that 'a reasonable insured would understand that the insurer promises to investigate in good faith and pay covered claims.'" *Id.* at 31 (citations omitted). In addition, a policyholder may "bargain for the peace of mind, or comfort, of knowing that it will be protected in the event of a catastrophe." *Id.*

To determine whether consequential damages were reasonably contemplated by the parties, courts look to "the nature, purpose and particular circumstances of the contract known by the parties … as well as 'what liability the defendant fairly may be supposed to have assumed consciously, or to have warranted the plaintiff reasonably to support it was assumed, when the contract was made.'" *Id.* (citations omitted).

In *Bi-Economy*, the Court of Appeals found that the purpose of first party insurance coverage like the coverage XL sold to Prestige is "to ensure that [the policyholder] had the financial support necessary to sustain its business operation in the event that disaster occurred." *Id.* (citations omitted). Thus, the very purpose of such coverage "would have made the [insurance company] aware that if it breached its obligations under the contract to investigate in good faith and pay covered claims it would have to respond in damages" for losses suffered by the policyholder as a result of a breach. *Id.* at 195 (citations omitted). Accordingly, the Court of

Appeals held that the policyholder in *Bi-Economy* could recover consequential damages.
Similarly, in *Panasia*, the Court of Appeals applied *Bi-Economy* and affirmed the denial of an
insurance company's motion to dismiss a policyholder's request for consequential damages. *See*
*Panasia*, 10 N.Y.3d 200.

In this case, Prestige has asserted a breach of contract claim for which it requested
consequential damages. Prestige alleges facts which, if proved, could be sufficient to establish a
breach by XL of its duty of good faith and fair dealing and an obligation to pay the damages that
Prestige alleged. These allegations include that, as a direct consequence of XL's decision to
disclaim any coverage obligation, Prestige sustained a cash-flow shortage because XL refused to
pay coverage under the policy and, as XL knew, Prestige needed the insurance proceeds to pay
ongoing costs of its normal business operations, such as replenishing inventory to fill new orders.
*See*, Counterclaim, at ¶¶ 44, 73.

It is both plausible and reasonable that a policyholder the size of Prestige would suffer
financial burdens if its insurance company refused to promptly honor payment of a warehouse
theft claim where inventory is the lifeblood of its ability to ship goods to its retail clients.
Indeed, Prestige specifically alleges that XL's breach undermined Prestige's ability to operate its
business because Prestige had less cash, reduced sales proceeds and lost inventory it then could
no longer sell and was faced with a simultaneous need for cash to replenish its inventory. In that
situation, Prestige lacked capacity to fill sales orders as it otherwise would be able to do;
increased the amount of credit Prestige needed to obtain at cost to its business; and undermined
Prestige's ability to reduce its borrowing by having the prompt payment of a covered claim. *Id.*
at ¶¶ 44, 73 and 76. Based on these well-pleaded facts, Prestige specifically alleges that the
resulting damages were in the parties' contemplation at the time of contracting because XL knew

that a small, family-owned business like Prestige would experience cash-flow hardships as a result of a theft if XL refused to pay a substantial insurance claim, particularly one that exceeded $1 million. *Id.* at ¶ 76. In fact, XL stated in writing at the time it issued the Policy that prompt payment of a claim is necessary "so [the policyholder] can get back to business as soon as possible." *Id.* These factual assertions sufficiently allege consequential damages. *Bi-Economy,* 10 N.Y.3d 187, 193-195 (2008) (holding that insurance company was aware at time of contracting, given purpose of coverage and nature of policyholder's business, that policyholder's business could collapse without insurance proceeds).

The XL Motion argues, however, that consequential damages for an insurance company's breach of its duty of good faith and fair dealing are limited to instances involving only business interruption claims. XL Motion at 8 – 9. But no such limitation exists under the Court of Appeals rulings in *Bi-Economy* or *Panasia.* In *Panasia,* the Court of Appeals ruled that consequential damages could be recovered by a policyholder under a builder's risk insurance policy. In fact, XL cites cases allowing consequential damages that did not involve business interruption claims. *See, e.g., AMTRAK v. Arch Specialty Ins. Co.,* 124 F. Supp. 3d 264, 280 (S.D.N.Y. 2015), *aff'd in part, vacated in part on other grounds,* 661 F. App'x 10 (2d Cir. 2016) (consequential damages properly alleged in property insurance dispute based on flood damage); *Roman Catholic Archdiocese of Rockville Centre v. General Reinsurance Corp.,* No. 16 Civ. 02063, 2016 U.S. Dist. LEXIS 133724 (S.D.N.Y. Sept. 13, 2016) (sustaining consequential damages claim in denial of injury indemnification claim under Workers' Compensation and Employers' Liability Policy) ("*Roman Catholic Archdiocese*").

Similarly, in *Bi-Economy,* the Court of Appeals did not limit the availability of consequential damages to policyholders based upon the label of the insurance policy. While the

Court of Appeals did emphasize the business interruption nature of the insurance protection purchased by Bi-Economy, the court also noted that substantial sums of property damage coverage were also improperly withheld by the insurance company—not just an underpayment of business interruption coverage. Indeed, the dissent written by Judge Smith interpreted the majority's decision in *Bi-Economy* to have wide-spread effects punishing both unscrupulous insurance companies and insurance companies that may just be inefficient. *See Bi-Economy*, 10 N.Y.3d at 199.

Furthermore, the damages Prestige suffered from XL's breach of its duty of good faith and fair dealing do come within the circumstances recognized by the *Bi-Economy* majority for an award of consequential damages. Indeed, the nature, purpose, and circumstances of the Warehouse Endorsement was to cover all risks to Prestige's store inventory. As set forth in the Counterclaim, XL foresaw or should have foreseen that Prestige needs inventory to conduct normal business operations, which is why it needed insurance coverage for loss of warehoused inventory. If the inventory is lost or destroyed, the insurance protection becomes essential to serve as a safety net. XL knew this to be the case and confirmed its knowledge by stating on the insurance policy it sold to Prestige that "Our claims teams are ready to resolve your claim, so you keep moving your business forward." Similarly, XL comprehends the policyholder's need, even before sale of an insurance policy, concerning the consequences of an improper failure to pay a covered claim because it represents in its marketing materials that it will "investigate, manage and resolve [the policyholder's] covered claim – so [the policyholder] can get back to business as soon as possible." *See* Counterclaim, ¶ 76.

XL also asserts that a suffering "mental anguish" (or the failure of an insurance company to fulfill its obligation to grant peace of mind) is not actionable for a business entity. That,

however, is contrary to the New York Court of Appeals' express holding in *Bi-Economy,* which

was a ruling in favor of a corporate policyholder:

> An insured may also bargain for the peace of mind, or comfort, of knowing that it will be protected in the event of a catastrophe (see e.g. Beck v Farmers Ins. Exch., 701 P.2d 795, 802 [Utah 1985] ["(I)t is axiomatic that insurance frequently is purchased not only to provide funds in case of loss, but to provide peace of mind for the insured or his beneficiaries"]; Best Place, Inc. v Penn Am. Ins. Co., 82 Haw. 120, 128, 920 P.2d 334, 342 [1996], quoting Noble v National Am. Life Ins. Co., 128 Ariz. 188, 189, 624 P.2d 866, 867 [1981] ["An insurance policy is not obtained for commercial advantage; it is obtained as protection against calamity"]; Andrew Jackson Life Ins. Co. v Williams, 566 So.2d 1172, 1179 n 9 [Miss 1990] ["(A)n insured bargains for more than mere eventual monetary proceeds of a policy; insureds bargain for such intangibles as risk aversion, peace of mind, and certain and prompt payment of the policy proceeds upon submission of a valid claim"]; Ainsworth v Combined Ins. Co. of Am., 104 Nev. 587, 592, 763 P.2d 673, 676 [1988] ["A consumer buys insurance for security, protection, and peace of mind"]).]

10 N.Y.3d at 194. The policyholder in *Bi-Economy* was a family owned business entity.

Similarly, Prestige is a small business consisting of 5 employees (including family members) that

sought peace of mind when purchasing insurance coverage from XL. Prestige has alleged

exactly what is necessary to enable a request for consequential damages to survive a motion to

dismiss.

      None of the cases cited by XL alter this conclusion. For example, in *Roman Catholic*

*Archdiocese,* the District Court refused to dismiss adequately pleaded consequential damages

claims. The policyholder alleged that the insurance company denied a claim for injuries on the

basis that the injuries were from an "occupational disease," not from a covered "accident;"

however, the insurance company invited the policyholder to submit additional documents for

consideration. *Roman Catholic Archdiocese*, at \*6-8. The policyholder submitted a Workers'

Compensation Board decision allowing benefits for an accident, as well as cases holding that the

Board was correct to treat the claim as an accident. The insurance company continued to refuse

to pay the claim without explanation. *Id.* at \*8. The policyholder alleged that the insurance company was liable for the policyholder's consequential damages. *Id.* at \*12.

The District Court articulated the *Bi-Economy* and *Panasia* standards for recovery of consequential damages, and recognized "the commonsense rule" that, in examining the foreseeability of consequential damages, a court should "consider what the parties would have concluded had they considered the subject." *Id.* at \*14. Accordingly, "[i]n light of *Bi-Economy*," the policyholder "adequately plead[ed]" consequential damages for a bad faith breach of the implied covenant of good faith. *Id.* at \*14-15. In fact, the District Court stated that the determination of whether the consequential damages were "'reasonably foreseeable and contemplated by the parties,'… is a <u>factual issue and thus reserved for the merits stage of litigation.</u>" *Id.* at \*15 (quoting *Bi-Economy*) (emphasis added).

XL's citation to *Hold Bros v. Hartford Cas. Ins. Co.*, 357 F. Supp. 2d 651 (S.D.N.Y. 2005) is also misplaced. In that case, decided prior to *Bi-Economy* and *Panasia,* the District Court noted that, as of that time, the New York Court of Appeals had not ruled on whether a policyholder can obtain consequential damages from an insurance company's breach of contract. *Hold Bros.*, 357 F. Supp. 2d at 656. The District Court, like the court in *Roman Catholic Archdiocese*, stated that when determining the reasonable contemplation of the parties, "the commonsense rule to apply is to consider what the parties would have concluded had they considered the subject." *Hold Bros.*, 357 F. Supp. 2d at 657 (internal quotes omitted). "In other words, under New York law, a court may fill in the gap in order to effectuate the intent of the parties." *Id.* While the District Court found that an issue of fact existed as to whether a policy provision excluded the recovery of consequential damages, it concluded that the policyholder adequately pleaded a claim for consequential damages. Another pre- *Bi-Economy* case cited by

XL does not even involve an insurance coverage dispute. In fact, the loss there was collateral to the parties' agreement - the policyholder sought to recover consequential damages in the form of the loss of anticipated appreciation in value of land owned in periphery of a proposed stadium site. Here, the loss of Prestige's inventory in the warehouse is the very essence of the Warehouse Endorsement contract between Prestige and XL.[2]

### B.   Federal Courts Applying New York Law Have Denied Motions to Dismiss Requests for Consequential Damages in Breach of Contract Claims.

In accordance with *Bi-Economy*, courts repeatedly have denied motions to dismiss requests for consequential damages in breach of contract claims, such as this one.[3] In *Sikarevich*, for example, the Court denied a motion to dismiss a request for consequential damages arising from an insurance company's breach of its contractual obligations to pay a Superstorm Sandy

---

[2]   The other cases on which XL relies are equally inapplicable. *See, e.g., Cont'l Info. Sys. v. Fed. Ins. Co.*, No. 02 Civ. 4168, 2003 U.S. Dist. LEXIS 682 (S.D.N.Y. Jan. 17, 2003) (Court's holding that policyholder's purchase of business interruption coverage did not put insurance company on notice that delay in payment would lead to cancelling of contracts or need to layoff all employees undermined by New York Court of Appeals' subsequent *Bi-Economy* holding); *Howard Stores Corp. v. Foremost Ins. Co.*, 82 A.D.2d 398 (1st Dept. 1981) (case does not involve a consequential damages claim and pre-dates *Bi-Economy*); *O.K. Petroleum Distrib. Corp. v. Travelers Indem. Co.*, No. 09 Civ. 10273, 2010 U.S. Dist. LEXIS 71465 (S.D.N.Y. July 15, 2010) (claim that insurance company's denial was unreasonable dismissed where policyholder had sued an additional insurance company for denial in previous year and another had issued an extensive reservation of rights).

[3]   *See, e.g., Sikarevich*, 2014 U.S. Dist. LEXIS 92254; *Chernish v. Mass. Mut. Life Ins. Co.*, No. 5:08-CV-0957, 2009 U.S. Dist. LEXIS 9617 (N.D.N.Y. Feb. 10, 2009); *Chaffee v. Farmers New Century Ins. Co.*, No. 5:04-CV-1493, 2008 U.S. Dist. LEXIS 74334 (N.D.N.Y. Sept. 24, 2008). *See also Goldmark, Inc. v. Catlin Syndicate Ltd.*, No. 09-CV-3876, 2011 U.S. Dist. LEXIS 18197, at *11 (E.D.N.Y. Feb. 24, 2011) (dismissing bad faith cause of action but permitting leave to amend the Complaint to assert the basis for consequential damages in connection with the breach of contract and noting that "the recovery of consequential damages constitutes additional recovery under the contract itself."); *Niesenbaum v. AXA Equit. Life Ins. Co.*, No. 600412/2013, 2015 N.Y. Misc. LEXIS 4928 (N.Y. Supr., Nassau Cty., March 10, 2015) (denying insurance company summary judgment motion for dismissal of bad faith allegations and consequential damages, including attorney fees); *Handy & Harman v. Am. Int'l Grp., Inc.*, No. 0115666/2007, 2008 N.Y. Misc. LEXIS 7522 (N.Y. Sup. Ct., N.Y. Cty. Aug. 26, 2008) (state court decision dismissing bad faith cause of action but finding that the policyholder sufficiently alleged a basis for seeking consequential damages in the context of the breach of contract cause of action).

claim. *See Sikarevich*, 2014 U.S. Dist. LEXIS 92254. The request was for the loss of income

due to the insurance company's failure to pay, investigate and value the claim. The Court held

that this loss was within "the natural contemplation of the parties herein as the natural probable

result of a breach of [the insurance company's] duties." *Id*. at *14-15. Although the Court noted

that it remained to be proven whether the allegations are true and whether the damages were

attributable to any breach, the allegations were deemed sufficient for the purposes of a Rule

12(b)(6) motion and the Court declined to dismiss the demand. *Id.*

　　　Although the *Sikarevich* court found that there is no "independent cause of action for bad

faith denial of insurance coverage" and indeed held that the claim for breach of the implied

covenant of good faith and fair dealing was "duplicative of the plaintiff's breach of contract

claim," the court permitted the plaintiff to seek "consequential damages in connection with its

breach of contract claim." *Id*. at *6-10, *12-15. *Goldmark*, also permitted the policyholder to

proceed with a claim for recovery of consequential damages in connection with a breach of

contract. *Goldmark*, U.S. Dist. LEXIS 18197 at *14. There, the Eastern District held that a

policyholder "sufficiently alleged a breach of the covenant of good faith to possibly sustain, if

successful, a claim for consequential damages." Finding that "such allegations relate to the

potential measure of damages under the first cause of action for breach of contract," the court

permitted the policyholder to assert its claim for such relief under the breach of contact cause of

action instead of as a separate count for bad faith claim handling. *See id.*; *Handy & Harman*,

2008 N.Y. Misc. LEXIS 7522 at *16-17. The lesson from *Goldmark* is that Prestige has sought

the relief of consequential damages properly.

　　　Additionally, in *Harriprashad v. Metropolitan Property & Casualty Insurance Co.*, No.

09-CV-3105, 2011 U.S. Dist. LEXIS 145573 (E.D.N.Y. Nov. 17, 2011), the court held that:

Generally, an insured cannot recover additional damages from an insurer beyond the policy limits, but New York courts make an exception when there is a showing of bad faith. See AXIS Reinsurance Co. REFCO Related Ins. Litig., No. 07-CV-07924, 2010 U.S. Dist. LEXIS 33377, 2010 WL 1375712, at *5-7 (S.D.N.Y. Mar. 7, 2010) (amended by 2010 WL 1375070 (S.D.N.Y. Mar 19, 2010); report and recommendation adopted by 2010 U.S. Dist. LEXIS 33322, 2010 WL 1374891 (S.D.N.Y. Apr 5, 2010)) (collecting cases). "'[C]onsequential damages resulting from a breach of the covenant of good faith and fair dealing may be asserted in an insurance contract context,' provided that the parties under the policy contemplated them as the foreseeable result of a breach when they entered into the contract." 2010 U.S. Dist. LEXIS 33377, [WL] at *6 (quoting Panasia Estates, Inc. v. Hudson Ins. Co., 10 N.Y.3d 200, 203, 856 N.Y.S.2d 513, 886 N.E.2d 135 (2008)); see also Bi-Economy Market, Inc. v. Harleysville Ins. Co. of New York, 10 N.Y.3d 187, 192, 886 N.E.2d 127, 856 N.Y.S.2d 505 (2008) (recognizing that special damages are recoverable in  [*5] limited circumstances); Goldmark, Inc. v. Catlin Syndicate Ltd., No. 09-CV-3876, 2011 U.S. Dist. LEXIS 18197, 2011 WL 743568, at *3 (E.D.N.Y. Feb. 24, 2011) (citing cases). Here, Plaintiff makes the argument that MetLife denied the coverage in bad faith. Accordingly, at this liberal pleading stage, Plaintiff should be permitted to assert a claim for special damages. See Woodworth v. Erie Ins. Co., No. 05-CV-6344, 2009 U.S. Dist. LEXIS 49379, 2009 WL 1652258, at *5 (W.D.N.Y. Jun. 12, 2009) (granting, in part, leave to amend the complaint to assert a demand for consequential damages) (report and recommendation adopted by and modified by 2009 U.S. Dist. LEXIS 100834, 2009 WL 3671930 (W.D.N.Y. Oct 29, 2009)). Whether Plaintiff will prevail on such a claim will be decided at a later juncture.

And, as set forth above, *Roman Catholic Archdiocese*, a case relied on by XL, denied a motion to dismiss the policyholder's consequential damages claim. Here, the XL Motion should be denied under state and federal precedent.

## C.   Admiralty Law Is Irrelevant to this Action and to the XL Motion

The XL Motion contains (at pages 6 – 7) a discussion on "Choice of Law". It then proceeds to provide an analysis, albeit in limited fashion, of consequential damages and recovery of attorney fees under admiralty law. The XL Motion at 7, 12-13. XL also argues that it was not unreasonable for it to base its denial of coverage on the application of admiralty law to Prestige's insurance claim under the Warehousing coverage XL sold to Prestige. *Id.* at 14.

Despite XL's allegations to the contrary, this Action has nothing to do with admiralty. As the cases in this Circuit make clear, warehouse insurance and contractual liability for storage losses are not maritime concerns. XL cites to *Folksamerica Reinsurance Co. v. Clean Water of*

*New York, Inc.,* 413 F.3d 307 (2d Cir. 2005) without acknowledging the two most relevant

holdings by the Second Circuit for purposes of this case: (1) Cargo lost at "a Mexican warehouse

clearly has little to do with 'the business of maritime commerce'", *id.* at 313; and (2) the label

attached to the insurance policy does not determine admiralty jurisdiction. *Id.* at 317.

 The law in this Circuit for nearly the past century has made clear that contractual

disputes, including insurance coverage disputes, concerning liability for stored and warehoused

cargo losses do not give rise to admiralty jurisdiction. *See, e.g., Atlantic Mut. Ins. Co. v. Balfour

MacLaine Int'l*, 85 F.3d 68 (2d Cir. 1996) (holding doctrine of *uberrimae fidei* does not apply to

warehouse coverage of open cargo marine policy for lost goods in foreign warehouse designated

for land travel and there was no admiralty jurisdiction for marine insurance company's claims

seeking to void coverage, *ab initio,* due to failure by policyholder to disclose prior losses);

*Pillsbury Flour Mills Co. v. Interlake S. S. Co.*, 40 F.2d 439 (2d Cir. 1930) (ruling no admiralty

jurisdiction over contract suit concerning damaged cargo, where cargo already arrived by ship

which anchored "in the outer harbor, under the agreements contained in the bills of lading, [and]

the maritime service of carriage ended and the appellee then became a warehouseman for the"

cargo); *Paul Marsh, Inc. v. Edward A. Goodman Co.*, 612 F. Supp. 635, 640 (S.D.N.Y. 1985)

(marine cargo insurance claim under warehouse endorsement for goods missing from warehouse

well after ocean transit completed is not a case implicating maritime interests or admiralty

jurisdiction) (cited with approval by *Atlantic Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd.,* 968

F.2d 196, 200 (2d Cir. 1992)). *See also Am. Home Assur. Co. v. Merck & Co.*, 329 F. Supp. 2d

436 (S.D.N.Y. 2004) (finding no admiralty jurisdiction for manuscript transit insurance policy

insuring cargo shipped by sea, air and land where contested losses occurred by air transit);

*American Nat'l Fire Ins. Co. v. Mirasco* Inc., No. 99 Civ. 12405, 2000 U.S. Dist. LEXIS 13736

*19 (S.D.N.Y., Sept. 22, 2000) (ruling no admiralty jurisdiction for contested insurance claim under open cargo policy where non-maritime insurance term was at issue involving the rejection of cargo transported by ocean voyage to Egypt); *Moore-McCormack Lines, Inc. v. Int'l Terminal Operating Co.*, 619 F. Supp. 1406, 1421 (S.D.N.Y. 1985) (holding that "It is now clear that storage contracts and cargo losses occurring during periods of storage, whether on the pier or elsewhere, are not cognizable as maritime activity and, thus, outside federal admiralty jurisdiction"); *Jessica Howard Ltd. v. M/V Sky Light*, No. 00 Civ. 6319, 2002 U.S. Dist. LEXIS 3623 *10 (S.D.N.Y., March 5, 2002), *vacated and remanded on other grounds by,* 316 F.3d 165 (2d Cir. 2003) (*citing Atlantic Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd.,* 968 F.2d 196 *(2d Cir. 1992)* and holding no admiralty jurisdiction over contract dispute for missing cargo imported by sea where "maritime transportation was completed prior to the loss; any connection to maritime commerce is minimal and cannot justify an exercise of jurisdiction."); 1 *Benedict on Admiralty* § 184 n.1 (summarizing *In re Balfour MacLaine Int'l Ltd.*, 873 F. Supp. 862 (S.D.N.Y. 1995) and noting "no admiralty jurisdiction over insurance covering goods stored in warehouse");[4] *cf. Hillcrea Exp. & Imp. Co. v. Universal Ins. Co.*, 110 F. Supp. 204 (S.D.N.Y. 1953), *aff'd*, 212 F.2d 206 (2d Cir. 1954) (holding warehouse to warehouse transit clause of marine policy did not cover loss of goods being shifted from shipper's warehouses to its waterside warehouse where goods were to then be segregated and made ready for ocean transport).

Admiralty law simply does not apply to Prestige's insurance claim nor to XL's claims in this Action. While there are maritime components of the XL insurance policy, they are not the

---

[4]   *See also Luvi Trucking, Inc. v. Sea-land Service, Inc.*, 650 F.2d 371 (1st Cir. 1981) (holding that "it has long been the rule that contracts involving cargo are maritime only to the extent the cargo is on a ship or being loaded on or off a ship."). XL "Specialty Policies' choice of law provision" also cannot impose Federal admiralty law into this dispute as there is no such "well established" Federal admiralty law for contractual disputes concerning warehouse and storage losses. *See* XL Motion at 7, n.3.

primary purpose of the agreement.  Counterclaim, ¶¶ 15-20, 23-27, 37, Ex. A, Warehousing

Coverage Endorsement (p. 1 of 2)).  The policy covers land based risks, ocean transit, air transit,

and transportation by ground.  *Id.*, Ex. A.  Nevertheless, under any reasonable view, the

Warehousing coverage is the predominant portion of the XL policy in terms of coverage limits,

including the issues in dispute in this case concerning the prior losses that XL alleges and argues

it can predicate its avoidance of coverage on for the July 4, 2017 warehouse loss suffered by

Prestige.  The nature of the XL insurance policy was known to XL well before it elected to deny

coverage and commence this Action.

### D.       Prestige Should Be Awarded Attorney Fees for an Improper Coverage Denial

XL improperly seeks to dismiss Prestige's claim for attorney fees.  XL acknowledges that

attorney fees are recoverable when an insurance company acts in bad faith in denying coverage.

*AMTRAK v. Arch Specialty Ins. Co.*, 124 F. Supp. 3d 264, 280 (S.D.N.Y. 2015), *aff'd in part,*

*vacated in part on other grounds*, 661 F. App'x 10 (2d Cir. 2016).  XL overlooks that Prestige

has alleged sufficient facts which not only support its breach of contract (including breach of the

duty of good faith and fair dealing) claim, but also evidence a bad faith denial of coverage,

including, that XL: (a) improperly invoked admiralty law to impose a heightened duty of

disclosure on Prestige; (b) forced Prestige to expend significant resources investigating and

proving up the full extent of the loss included in the claim, even though XL was apparently

planning to wrongfully deny coverage premised on information of which XL Insurance had

possession prior to the Policy; (c) had knowledge of the 2010 theft and the fact that Prestige did

not maintain loss runs; (d) had agreed to sell insurance year after year to Prestige without the

specific loss information it requested in 2014; and (e) sought to use immaterial information as a

basis to improperly avoid coverage for a covered claim. Counterclaim, ¶¶ 37, 69-71, 76.

While the XL Motion argues that it is not culpable for bad faith conduct, Prestige's allegations provide a plausible claim that this is not the case. XL argues that the parties merely possess a "reasonable difference of opinion regarding whether admiralty law, and its doctrine of *uberrimae fidei*, applies to the Policies[.]" XL Motion at 15. This, however, is not a plausible defense. XL knew, or should have known, that admiralty jurisdiction does not apply to contracts, including insurance policies, that govern the storage and warehousing of cargo. While XL may try to portray the disputed insurance claim as maritime in nature, that conveniently self-serving categorization is unsupportable under the law of this Circuit that XL knows or should know about. *Naias Marine S.A. v. Trans Pac. Carriers Co.*, No. 07 Civ. 10640, 2008 U.S. Dist. LEXIS 2438 *15 (S.D.N.Y. Jan. 10, 2008) (labeling a contract dispute as a "maritime does not make it so"). A repeat litigant such as XL which imposes choice of law clauses into its insurance policies knows or should know the actual state of the law concerning contract disputes, including insurance coverage fights, over warehouse and storage losses. As discussed in section II.C. above, XL's legal position seeking to invoke admiralty jurisdiction and law is unsupportable. *See Int'l Shipping Co., S.A. v. Hydra Offshore*, 675 F. Supp.146, 150-51 (S.D.N.Y. 1987) (ruling that improperly invoking admiralty jurisdiction to support subject matter jurisdiction for a contract dispute was sanctionable where an elementary review of legal treatises and cases would reveal that admiralty jurisdiction is not available for specific categories of contractual disputes).

Such alleged misconduct can plausibly be viewed as bad faith claims handling conduct proscribed by the Court of Appeals for the State of New York under *Sukup v. State*, 19 N.Y.2d 519 (N.Y. 1967), and thus may support an award of attorney fees. *See AMTRAK v. Arch Specialty*, 124 F. Supp. 3d at 280; *see also Niesenbaum v. AXA Equit. Life Ins. Co.,* No. 600412/2013, 2015 N.Y. Misc. LEXIS 4928 (N.Y. Supr., Nassau Cty., March 10, 2015)

(denying insurance company summary judgment motion for dismissal of bad faith allegations and consequential damages, including attorney fees); *Richman v. Harleysville Worcester Ins. Co.,* No. 600467/06, 2010 N.Y. Misc. LEXIS 6832 *3-4 (N.Y. Supr., N.Y. Cty., Nov. 1, 2010) (granting amendment of policyholder's complaint for consequential damages and attorney fees recovery).  XL cites *Sukup* and numerous other cases that it contends supports dismissal of Prestige's alleged entitlement to attorney fees.  But not one case cited by XL involved the dismissal of a claim for attorney fees at the motion to dismiss phase when the claimant alleged specific facts which, if true, would demonstrate the insurance company's bad faith.  Indeed, the vast majority of cases on which XL relies addressed the policyholder's entitlement to attorney's fees after a factual record had been developed, either on summary judgment or following trial. *See, Am. Nat'l Fire Ins. Co. v. Kenealy*, 72 F.3d 264, 270 (2d Cir. 1995) (affirming district court's finding that insurance company was not motivated by bad faith, finding "no facts" or "no evidence" to reverse that finding); *Protection Mut. Ins. Co. v. Silgan Plastics Corp.*, No. 96 Civ. 4493, NRB, 2000 U.S. Dist. LEXIS 12927 (S.D.N.Y. Sept. 7, 2000) (declining to include attorney fees in judgment, because "there has been no showing of [insurance company's] bad faith"); *The Ingersoll Milling Mach. Co. v. M/V Bodena*, 829 F.2d 293 (2nd Cir. 1987) (reversing award of attorney fees where unclear if insurance company was justified in denying claim; while district court acknowledged dissatisfaction with insurance company's failure to pay claim, it "never explicitly found" during bench trial that insurance company acted in bad faith); *Am. Home Assurance Co. v. Masters' Ships Mgmt. S.A.*, 423 F. Supp. 2d 193 (S.D.N.Y. 2007) (denying award for attorney fees after 17 day bench trial after evidence showed that policyholder, not insurance company, acted in bad faith); *N.Y. Marine & Gen. Ins. Co. v. Tradeline (L.L.C.)*, 98 Civ. 7840, 1999 U.S. Dist. LEXIS 20022 (S.D.N.Y. Dec. 29, 1999)

(denying summary judgment on attorney fees predicated on allegations of bad faith); *Sukup, supra* (recognizing that claim for bad faith denial of coverage may lie, however, finding after trial that there is no "evidence in the record on which a finding of bad faith…could reasonably be predicated."); *Fed. Ins. Co. v. PGG Realty LLC*, 529 F. Supp. 2d 460 (S.D.N.Y. 2008) (holding after "lengthy bench trial" that insurance company did not act in bad faith); *Jane St. Holding LLC v. Aspen Am. Ins. Co.*, No. 13 Civ. 2291, 2013 U.S. Dist. LEXIS 182110 (S.D.N.Y. Jan. 2, 2014) (determining on summary judgment that policyholder did not show "sufficient evidence" or sufficiently plead bad faith claim).  XL's remaining cases did not expressly address a claim for attorney fees in connection with allegations of bad faith.  *See, County of Orange v. Travelers Indem. Co.*, No. 13 Civ. 6790, 2014 U.S. Dist. LEXIS 66451, *10 (S.D.N.Y. May 14, 2014) (recognizing exception for attorney fees under *Bi-Economy*, but noting that policyholder did not argue for exception to apply); *Stein, LLC v. Lawyers Title Ins. Corp.*, 100 A.D.3d 622 (2d Dept. 2012) (holding only that attorney fees not recoverable fees for bringing claim against insurance company absent contractual or policy provision, but not addressing exception for bad faith denial of claim); *30-40 E. Main St. Bayshore, Inc. v. Republic Franklin Ins. Co.*, 115 A.D.3d 737 (2d Dept. 2014) (same); *New York Univ. v. Cont'l Ins. Co.*, 87 N.Y.2d 308 (1995) (addressing, pre-*Bi-Economy*, entitlement to attorney fees for breach of contract claim seeking indemnification, and not claim for breach of obligations to act in good faith, and holding only that policyholder not entitled to attorney fees in bringing action against insurance company to settle its rights).[5]

---

[5]   XL did not cite *Roman Catholic Archdiocese* as support for this proposition.  That court dismissed the policyholder's claim for attorney fees, however, the policyholder did not allege that attorney fees were a component of consequential damages, and the court did not expressly address whether the bad faith denial would warrant the recovery of attorney fees. *See, Roman Catholic Archdiocese* at *15-16.

Because Prestige has asserted a facially plausible request for consequential damages in connection with its breach of contract claim, there is no basis for XL to seek dismissal of the damages claims, including the attorney fees claim.

**III.     The Request To Strike Allegations as Impertinent is Improper and Baseless.**

XL seeks to strike factual allegations about its coverage litigation history that it deems "immaterial and irrelevant." XL Motion at 17. But these allegations are relevant to Prestige's counterclaim. For example, XL's alleged status as an "institutional litigant" supports the claim for attorney fees because XL knows that the "natural probable result" of its refusal to pay a covered claim and commencing litigation would be Prestige's need to incur litigation fees and costs to enforce its insurance coverage rights. Counterclaim, ¶ 75. Similarly, the allegation, upon information and belief, that XL or its affiliates have recently sought to impose a heightened duty under admiralty law and to void a policy *ab initio* based on alleged misrepresentations by other policyholders is also relevant. As set forth above, XL has improperly argued that admiralty law applies, and, therefore, Prestige has a heightened disclosure obligation, which directly relates to Prestige's claim that XL has breached the implied duty of good faith and fair dealing. If discovery bears out that XL's improper invocation of admiralty law and a heightened disclosure standard is a litigation tactic XL employs, this bolsters a bad faith claim, and could suggest improper practices directed at the public at large.

While Rule 12(f) of the Federal Rules of Civil Procedure authorizes a trial court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter", courts do not favor such relief. In *Whittlestone, Inc. v. Handi-Craft Co.,* 618 F.3d 970 (9th Cir. 2010), the Ninth Circuit reversed the District Court order striking allegations concerning consequential damages. *Id.* at 971. In reaching this decision, the court first analyzed

whether the claim for lost profits and consequential damages fell within any of the categories of Rule 12(f). The Ninth Circuit found the decision to strike was reversible error because, among other things, the damages claim "is not impertinent, because whether these damages are recoverable relates to the harm being alleged." Id.

Because "the Court must view the pleadings in a light most favorable to the pleading party," a 12(f) motion to strike will rarely be granted. *In re 2TheMart.com, Inc. Securities Litigation*, 114 F.Supp.2d 955, 965 (C.D. Cal. 2000). Denying a motion to strike in *In re 2TheMart.com*, the court described the heavy burden facing the movant:

> Impertinent" has been defined as allegations that are not responsive or irrelevant to the issues that arise in the action and which are inadmissible as evidence.

*Id.*

XL cannot demonstrate that the allegations in Prestige's pleading have absolutely "no bearing" on the case.  To the contrary, these allegations support both the consequential damages claim and the allegations that XL has not performed its contractual obligations in good faith. Because motions to strike are disfavored, XL's Motion should be denied.

## CONCLUSION

For the reasons above, Prestige respectfully requests that the XL Motion be denied in its entirety.

Dated:    June 26, 2018

By: _____

Joshua Gold
Dennis J. Nolan
**ANDERSON KILL, P.C.**
1251 Avenue of the Americas
New York, NY  10020
Telephone:  212-278-1000

*Attorneys for* Defendant/Counterclaim-
Plaintiff Prestige Fragrances, Inc.

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on this 26th day of June, 2018, a copy of the foregoing **DEFENDANT/COUNTERCLAIM-PLAINTIFF PRESTIGE FRAGRANCES, INC.'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF/ COUNTERCLAIM-DEFENDANT XL SPECIALTY INSURANCE COMPANY'S MOTION TO DISMISS CLAIMS AND STRIKE ALLEGATIONS OF THE SECOND AMENDED COUNTERCLAIM** was served on counsel of record listed below via email and U.S. Mail.

> Louis H. Kozloff, Esq.
> Hillary N. Ladov, Esq.
> Goldberg Segalla, LLP
> 1700 Market Street, Suite 1418
> Philadelphia, PA 19103-3907
> LKozloff@goldbergsegalla.com
> hladov@goldbergsegalla.com
>
> Todd D. Kremin, Esq.
> Goldberg Segalla, LLP
> 711 Third Avenue, Suite 1900
> New York, New York 10017-4013
> tkremin@goldbergsegalla.com

_____
Dennis J. Nolan, Esq.