UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| XL SPECIALTY INSURANCE COMPANY,<br><br>    Plaintiff,<br><br>    v.<br><br>PRESTIGE FRAGRANCES, INC.,<br><br>    Defendant.<br>_____<br><br>PRESTIGE FRAGRANCES, INC.,<br><br>    Counterclaim-Plaintiff,<br><br>    v.<br><br>XL SPECIALTY INSURANCE COMPANY,<br><br>    Counterclaim-Defendant. | Civil Action No.: 1:18-cv-00733<br><br>AMENDED COMPLAINT |

In support of its Amended Complaint for declaratory judgment, Plaintiff and Counterclaim-Defendant XL Specialty Insurance Company ("XL Specialty") alleges as follows:

**PARTIES**

1.    XL Specialty is an insurance company organized and existing under the laws of the State of Delaware. XL Specialty has its principal place of business in Stamford, Connecticut.

2.    Prestige Fragrances, Inc. ("Prestige") is a New Jersey Corporation with its principal place of business in Hillsborough, New Jersey. Prestige is an importer, exporter and distributor of fine fragrances and cosmetics.

## JURISDICTION AND VENUE

3.     The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1333.  This is a case of admiralty jurisdiction because the insurance contract at issue is a marine insurance policy.  XL Specialty designates its claim as an admiralty claim.

4.     In addition or alternatively, the Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a).  There is complete diversity of citizenship between XL Specialty, which is a citizen of Delaware and Connecticut, and Prestige, which is a citizen of New Jersey.  The amount in controversy exceeds $75,000, exclusive of interest and costs.

5.     The Court has personal jurisdiction over Prestige.  Prestige has sufficient minimum contacts with the state of New York to render the exercise of jurisdiction by a New York court permissible under traditional notions of fair play and substantial justice.  Prestige's acts and omissions giving rise to XL Specialty's claim for declaratory judgment occurred in New York in that Prestige provided information to XL Specialty at XL Specialty's marine underwriting department's offices in New York City and XL Specialty's acts of considering and relying on this information when it made decisions regarding underwriting and issuance of insurance policies to Prestige occurred in XL Specialty's marine underwriting department offices in New York City.

6.     Venue is proper in this district.

## FACTUAL ALLEGATIONS

A.     **XL Specialty's Underwriting of Prestige's Marine Cargo Insurance Policies**

7.     On September 5, 2014, Prestige, acting through its insurance broker, Frenkel & Company ("Frenkel"), contacted XL Specialty's marine underwriting department at 200 Liberty Street, New York, New York, to solicit a quotation for a marine cargo insurance policy.  At all times material hereto, Frenkel acted on Prestige's behalf as its insurance broker.  All acts,

2

omissions, statements and representations by Frenkel on Prestige's behalf are binding upon and attributable to Prestige.

8. On September 5, 2014, when Frenkel first contacted XL Specialty on Prestige's behalf, Prestige was insured under a marine cargo insurance policy issued by another insurance company. XL Specialty had had no prior business relationship with Prestige.

9. In Frenkel's initial communication with XL Specialty on Prestige's behalf on September 5, 2014, Frenkel provided information regarding Prestige's business operations. Frenkel advised XL Specialty that Prestige was "currently loss free."

10. In response to Frenkel's September 5, 2014 communication soliciting a quotation, XL Specialty requested additional information about Prestige. In particular, XL Specialty asked how long Prestige had been "loss free" and requested a copy of Prestige's loss runs, which would identify any past losses. Frenkel responded to this request by stating that it would try to obtain the requested information if it could.

11. On September 8, 2014, XL Specialty issued a Marine Cargo Quote to Prestige for a Marine Cargo Insurance Policy to take effect on September 25, 2014. The Quote stated that the Quote was based on information XL Specialty had received from Frenkel and that it was subject to receiving a copy of Prestige's loss run for the prior five years before binding the policy.

12. On September 11, 2014, Frenkel, on Prestige's behalf, sent an email to XL Specialty ordering that a Marine Cargo Insurance Policy be bound pursuant to the terms of XL Specialty's September 8, 2014 Quote.

13. XL Specialty responded to Frenkel's September 11, 2014 email later that day to thank Frenkel for the order to bind coverage and to again request a copy of Prestige's loss run for the prior five years. Frenkel responded immediately and advised XL Specialty that Prestige did

not have loss runs, but that Prestige would provide the requested documentation to XL Specialty. At the time of this communication, Prestige and Frenkel were aware that Prestige had incurred multiple losses on its marine cargo insurance in the preceding five years. Prestige and Frenkel failed to disclose this information to XL Specialty.

14.   Later on September 11, 2014, after receiving Frenkel's response, XL Specialty confirmed to Frenkel that coverage under a Marine Cargo Insurance Policy was bound as of September 25, 2014.

15.   In reliance on information Prestige and Frenkel provided to XL Specialty prior to September 25, 2014, XL Specialty issued and bound Marine Cargo Insurance Policy, policy number UM00031200MA14A (the "2014 Policy"), effective September 25, 2014.

16.   In February and March 2015, XL Specialty contacted Frenkel to request documentation on Prestige's loss history. On each occasion, Frenkel stated that it would follow up with Prestige to provide the requested information. However, documentation of Prestige's loss history was not provided to XL Specialty. At the time of these communications, Prestige and Frenkel were aware that Prestige had incurred multiple losses on its marine cargo insurance in the preceding five years. Prestige and Frenkel failed to disclose this information to XL Specialty.

17.   In August 2015, Prestige, acting through Frenkel, contacted XL Specialty to request a quote for renewal of the 2014 Policy on its one year anniversary date of September 25, 2015. Frenkel provided information for XL Specialty to use in underwriting the renewal policy, including a statement that Prestige had no known or unreported losses. At the time of this communication, Prestige and Frenkel were aware that Prestige had incurred multiple losses on its marine cargo insurance in the preceding five years. Prestige and Frenkel failed to disclose this information to XL Specialty.

4

18. In reliance on information Prestige and Frenkel provided to XL Specialty prior to September 25, 2015, XL Specialty renewed the 2014 Policy and issued to Prestige Marine Cargo Insurance Policy, policy number UM00031200MA15A (the "2015 Policy"), which took effect on September 25, 2015.

19. In August 2016, XL Specialty began underwriting a renewal of the 2015 Policy to take effect on September 25, 2016. As part of the underwriting process, Frenkel again advised XL Specialty that Prestige had no known or unreported losses. At the time of this communication, Prestige and Frenkel were aware that Prestige had incurred multiple losses on its marine cargo insurance in the preceding five years. Prestige and Frenkel failed to disclose this information to XL Specialty.

20. In reliance on information Prestige and Frenkel provided to XL Specialty prior to September 25, 2016, XL Specialty renewed the 2015 Policy and issued to Prestige Marine Cargo Insurance Policy, policy number UM00031200MA16A (the "2016 Policy"), which took effect on September 25, 2016. (The 2014 Policy, the 2015 Policy and the 2016 Policy will be referred to collectively as the "Policies.")

21. When underwriting and deciding to issue the Policies, XL Specialty's underwriter believed that Prestige had no losses since 2009. XL Specialty's belief was based on the information provided to XL Specialty by Prestige and by Frenkel on Prestige's behalf and based on Prestige and Frenkel having not disclosed any prior losses to XL Specialty when XL Specialty underwrote the 2014 Policy, the 2015 Policy or the 2016 Policy.

22. Prestige owed a duty of utmost good faith to XL Specialty when seeking coverage under marine cargo insurance policies. Under the duty of utmost good faith, Prestige was required to disclose to XL Specialty all information material to XL Specialty's underwriting of the Policies.

23.  Information regarding Prestige's losses under prior marine cargo insurance policies was material to XL Specialty's underwriting decisions when it issued the 2014 Policy, the 2015 Policy and the 2016 Policy. If XL Specialty had known that Prestige had experienced losses under its prior marine cargo insurance policies, XL Specialty would not have issued the Policies or would have issued a marine cargo insurance policy to Prestige under materially different terms.

24.  Frenkel knew that information regarding Prestige's prior loss history was material to XL Specialty's underwriting decisions when issuing a marine cargo insurance policy.

### B.  Prestige and Frenkel Failed to Disclose Prior Losses

25.  In June 2010, Prestige suffered a burglary loss at its warehouse at 219 Homestead Road, Hillsborough, New Jersey (the "June 2010 Loss"), which included a theft of inventory valued at over $790,000.

26.  Prestige reported the June 2010 Loss to its marine cargo insurer at the time, Indemnity Insurance Company of North America. Indemnity Insurance Company of North America paid $788,142.97 to Prestige for loss of inventory in the June 2010 Loss.

27.  Prestige also reported the June 2010 Loss to its commercial property insurer at the time, Hartford Insurance Company of the Midwest. Hartford Insurance Company of the Midwest paid $331,321.14 to Prestige for loss to warehouse contents and business interruption in connection with the June 2010 Loss.

28.  In total, in connection with the June 2010 Loss, Prestige submitted claims to its insurers and was paid $1,119,464.11 by its insurers for Prestige's losses.

29.  During an April 2016 inspection of Prestige's warehouse that was conducted by a third party as part of XL Specialty's post-binding loss control process, Prestige failed to accurately disclose the June 2010 Loss. Prestige reported that it had experienced a loss of about $200,000

6

that occurred about four years before April 2016. XL Specialty was not informed that the loss included a theft of inventory.

30. In March 2012, Prestige suffered a loss of cargo due to mishandling (the "March 2012 Cargo Loss").

31. Prestige reported the March 2012 Cargo Loss to its marine cargo insurer at the time, AGCS Marine Insurance Company. AGCS Marine Insurance Company paid $37,576.71 to Prestige for the March 2012 Cargo Loss.

32. In January 2013, Prestige suffered a loss of cargo due to a shortage of cargo upon delivery (the "January 2013 Cargo Loss").

33. Prestige reported the January 2013 Cargo Loss to its marine cargo insurer at the time, AGCS Marine Insurance Company. AGCS Marine Insurance Company paid $14,000.98 to Prestige for the January 2013 Cargo Loss.

34. The June 2010 Loss, the March 2012 Cargo Loss, and the January 2013 Cargo Loss were not disclosed to XL Specialty by Prestige or Frenkel in response to XL Specialty's inquiry into Prestige's loss history during underwriting of the Policies.

### C. Prestige's Claim for a July 4, 2017 Theft of Inventory

35. On July 10, 2017, Prestige notified XL Specialty that a theft of inventory had occurred during the July 4, 2017 holiday weekend at its warehouse at 6 Jill Court, Hillsborough, New Jersey (the "July 2017 Theft Loss"). Prestige provided notice of the July 2017 Theft Loss to XL Specialty to seek coverage under the 2016 Policy.

### D. Rescission of the XL Specialty Policies

36. In connection with its investigation of the July 2017 Theft Loss, XL Specialty learned of the June 2010 Loss for the first time.

37. On January 26, 2018, XL Specialty informed Prestige that XL Specialty was rescinding the 2014 Policy, the 2015 Policy and the 2016 Policy as void *ab initio* because Prestige had misrepresented and failed to disclose material facts about its prior loss history when XL Specialty underwrote and issued the Policies and that therefore, XL Specialty disclaimed coverage for July 2017 Theft Loss.

38. On February 6, 2018 tendered and returned to Prestige the full amount of premiums Prestige paid for the Policies, plus interest.

39. During discovery conducted in this Action after XL Specialty's Complaint was filed, including Prestige's production of documents to XL Specialty and XL Specialty's deposition of Prestige's Chief Executive Officer, XL Specialty learned of the March 2012 Cargo Loss and the January 2013 Cargo Loss for the first time.

## COUNT I

### DECLARATORY JUDGMENT THAT THE POLICIES ARE RESCINDED AND VOID *AB INITIO* BASED ON MISREPRESENTATIONS IN UNDERWRITING

40. XL Specialty incorporates by reference the allegations in paragraphs 1 through 39 of the Complaint as if fully set forth herein.

41. When providing information to XL Specialty for XL Specialty's consideration in underwriting and maintaining marine cargo insurance policies issued to Prestige, Prestige, and its broker, Frenkel, misrepresented and failed to disclose material facts about Prestige's history of prior losses.

42. Prestige and Frenkel failed to disclose the June 2010 Loss, the March 2012 Cargo Loss, and the January 2013 Cargo Loss to XL Specialty during the underwriting of the Policies in response to XL Specialty's inquiry into Prestige's loss history.

43. Information regarding Prestige's prior history of losses on its marine cargo insurance policies and insurance claims for such losses was material to XL Specialty when underwriting the Policies issued to Prestige.

44. If Prestige and Frenkel had accurately represented or disclosed information about Prestige's loss and claim history, XL Specialty would not have issued the Policies or would have issued the Policies on materially different terms.

45. XL Specialty issued the Policies in reliance on the truth, accuracy and full disclosure of information Prestige and its representative Frenkel provided to XL Specialty when XL Specialty was underwriting the Policies issued to Prestige.

46. Each of the Policies that XL Specialty issued to Prestige contains the following provision:

> In consideration of the payment of premiums when due, and in reliance on the information and representations you give us or one of our authorized representatives, and subject to the terms, conditions and warranties of the policy, we will provide the coverage set forth herein.

47. Based on Prestige's misrepresentation of, and failure to disclose, material facts regarding its loss and claims history when XL Specialty was underwriting the Policies issued to Prestige, XL Specialty is entitled to a declaration that the Policies are rescinded and void *ab initio*.

48. Because the Policies are rescinded and void *ab initio*, XL Specialty is entitled to a declaration that XL Specialty has no obligation to provide coverage for the July 2017 Theft Loss under the 2016 Policy or any of the other Policies or to otherwise pay Prestige for any losses incurred in the July 2017 Theft Loss.

**WHEREFORE**, XL Specialty requests that the Court enter judgment in its favor:

1. Declaring that the 2014 Policy (policy number UM00031200MA14A), the 2015 Policy (policy number UM00031200MA15A) and the 2016 Policy (policy number UM00031200MA16A) are rescinded and void *ab initio*;

2. Declaring that XL Specialty owes no obligation to Prestige under the Policies, or otherwise, to pay Prestige for any losses incurred in the July 2017 Theft Loss; and

3. Awarding to XL Specialty any such additional declaratory or other relief as shall be found reasonable and appropriate under the circumstances.

Dated: December 4, 2018

Respectfully submitted,

GOLDBERG SEGALLA LLP

 /s/ Louis H. Kozloff

Todd D. Kremin
GOLDBERG SEGALLA LLP
711 3rd Avenue, Suite 1900
New York, New York 10017-4013
(646) 292-8700

Louis H. Kozloff
Hillary N. Ladov
GOLDBERG SEGALLA LLP
1700 Market Street, Suite 1418
Philadelphia, PA 19103
(267) 519-6800

*Attorneys XL Specialty Insurance Company*

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 4, 2018, Plaintiff and Counterclaim-Defendant XL Specialty Insurance Company's Amended Complaint was served by Electronic Case Filing upon counsel of record listed below:

Joshua Gold
Dennis J. Nolan
Anderson Kill P.C.
1251 Avenue of the Americas
New York, NY 10020
jgold@andersonkill.com
dnolan@andersonkill.com

      /s/Louis H. Kozloff
      Louis H. Kozloff