**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

XL SPECIALTY INSURANCE COMPANY,

     Plaintiff,

     v.

PRESTIGE FRAGRANCES, INC.,

     Defendant.

_____

PRESTIGE FRAGRANCES, INC.,

     Counterclaim-Plaintiff,

     v.

XL SPECIALTY INSURANCE COMPANY,

     Counterclaim-Defendant.

Civil Action No.: 1:18-cv-00733

**PLAINTIFF AND COUNTERCLAIM-DEFENDANT XL SPECIALTY INSURANCE COMPANY'S REPLY MEMORANDUM IN FURTHER SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Dated: February 27, 2019

**GOLDBERG SEGALLA LLP**

Todd D. Kremin
711 3rd Avenue, Suite 1900
New York, NY 10017-4013
(646) 292-8700

Louis H. Kozloff
Hillary N. Ladov
1700 Market Street, Suite 1418
Philadelphia, PA 19103
(267) 519-6800

*Attorneys for Plaintiff/Counterclaim-Defendant XL Specialty Insurance Company*

22307770.v1

## <u>TABLE OF CONTENTS</u>

I.     INTRODUCTORY STATEMENT IN REPLY ................................................................. 1

II.    ARGUMENT IN REPLY ............................................................................................... 2

    A.   Uberrimae Fidei Applies to XL's Rescission Claim............................................... 2

         1.   Admiralty Jurisdiction Exists and Admiralty Law Applies ......................... 2

         2.   The Policies' Choice of Law Clause Mandates Application of
            Admiralty Law.............................................................................................. 4

         3.   XL and Prestige Did Not Contract Out of Uberrimae Fidei........................ 4

    B.   Frenkel & Company Was Prestige's Broker, Not XL's Agent............................. 5

    C.   XL is Entitled to Rescind the Policies .................................................................. 8

    D.   XL Has Not Lost the Right to Rescind the Policies Due to Waiver or
        Ratification............................................................................................................ 9

III.   CONCLUSION........................................................................................................... 10

# TABLE OF AUTHORITIES

Page(s)

**Cases**

Advani Enterprises, Inc. v. Underwriters at Lloyds,
    140 F.3d 157 (2d Cir. 1998)................................................................4

American Home Assurance Co., v. Masters' Ship Mgmt., S.A.,
    423 F. Supp. 2d 193 (S.D.N.Y. 2006).................................................5

Atlantic Mut. Ins. Co. v. Balfour MacLaine Int'l, Ltd.,
    968 F.2d 196 (2d Cir. 1992).................................................................3

In re Balfour MacLaine Int'l, Ltd.,
    85 F.3d 68 (2d Cir. 1996)....................................................................3

Connecticut Indem. Co. v. Perrotti,
    390 F. Supp. 2d 158 (D. Conn. 2005).................................................5

Cont'l Cas. Co. v. Boughton,
    695 F. App'x 596 (2d Cir. 2017) .......................................................10

Cont'l Cas. Co. v. Marshall Granger & Co., LLP
    6 F. Supp. 3d 380 (S.D.N.Y. 2014) ..................................................10

Fabrique Innovations, Inc. v. Federal Ins. Co.,
    No. 17 Civ. 737, 2019 WL 274896 (S.D.N.Y. Jan. 4, 2019)............2, 3, 7

Fareast Commodities Res. Ltd v. SGS SA,
    783 F. Supp. 2d 495 (S.D.N.Y. 2011)................................................3

Fidelity & Guar. Ins. Underwriters, Inc. v. Jasam Realty Corp.,
    540 F.3d 133 (2d Cir. 2008)................................................................8

Fireman's Fund Ins. Co. v. Great American Ins. Co.,
    822 F.3d 620 (2d Cir. 2016)................................................................2, 3, 4

Folksamerica Reinsurance Co. v. Clean Water of N.Y., Inc.,
    413 F.3d 307 (2d Cir. 2005)................................................................2, 3

Ford v. Unity Hospital,
    32 N.Y.2d 464 (1973) .........................................................................7

GuideOne Specialty Mut. Ins. Co. v. Congregation Adas Yereim,
    593 F. Supp. 2d 471 (E.D.N.Y. 2009) ...............................................10

HIH Marine Services, Inc. v. Fraser,
     211 F.3d 1359 (11th Cir. 2000) ........................................................9

Indagro S.A. v. Bauche S.A.,
     652 F. Supp. 2d 482 (S.D.N.Y. 2009)..............................................3

Jessica Howard Ltd. v. M/V Sky Light,
     No. 00 Civ. 6319, 2002 WL 362767 (S.D.N.Y. March 5, 2002)...............................3

Norfolk S. Ry. Co. v. Kirby,
     543 U.S. 14 (2004)..................................................................2, 3

Paul Marsh, Inc. v. Edward A. Goodman Co.,
     612 F. Supp. 635 (S.D.N.Y. 1985) .................................................2

Puritan Ins. Co. v. Eagle S.S. Co.,
     779 F.3d 866 (2d Cir. 1985)........................................................9

Thebes Shipping, Inc. v. Assicurazioni Ausonia SPA,
     599 F. Supp. 405 (S.D.N.Y. 1984) ................................................8

## I.   INTRODUCTORY STATEMENT IN REPLY

Prestige attempts to avoid summary judgment on XL's claim for rescission by disputing facts XL presented in support of its Motion and arguing that certain issues must be determined at trial.  This attempt is unavailing.  Material facts demonstrating XL's right to rescind the Policies under the applicable admiralty law rule of <u>uberrimae fidei</u> are undisputed.[1]  It is undisputed that Prestige had three marine cargo losses in the five years prior to September 2014.  It is undisputed these three marine cargo losses were not disclosed to XL during the underwriting of the Policies. It is undisputed that XL asked Prestige to disclose its loss history when XL underwrote insurance for Prestige.  It is also undisputed that Prestige's broker Frenkel & Company knew that Prestige's loss history was material to XL's underwriting decisions.  Even if the Court were to find a disputed issue of whether information on Prestige's 2010 marine cargo loss was disclosed to XL in 2016, it is undisputed that Prestige did not fully or accurately disclose the 2010 loss.  And it is undisputed that Prestige's two other marine cargo losses were not disclosed to XL until after XL conducted discovery in this Action.   Prestige's failure to disclose material information to XL justifies rescission of the Policies as a matter of law under <u>uberrimae fidei</u>.

Prestige also attempts to avoid rescission by arguing that its disclosure of loss history to Frenkel constitutes disclosure to XL because, as Prestige contends, Frenkel was XL's agent. Prestige's argument ignores the testimony of the Frenkel brokers whom Prestige attempts to cast as XL's agents, ignores or misconstrues the terms of the contract between XL and Frenkel, and relies on distinguishable case law.  The undisputed facts are that Frenkel acted as Prestige's broker in procuring and renewing Prestige's XL Policies.  Frenkel was not XL's agent as a matter of law.

---

[1]      <u>See</u> XL's Reply to Prestige's Rule 56.1 Response and Statement of Additional Facts.

## II.    ARGUMENT IN REPLY

### A.    Uberrimae Fidei Applies to XL's Rescission Claim

#### 1.    Admiralty Jurisdiction Exists and Admiralty Law Applies

Prestige's argument against admiralty jurisdiction ignores the fact that Norfolk S. Ry. Co. v. Kirby, 543 U.S. 14 (2004) represents a sea change in how federal courts evaluate whether contract claims, including insurance coverage claims, are subject to admiralty jurisdiction.  As stated in Kirby, and reiterated by the Second Circuit, "the boundaries of admiralty jurisdiction over contracts are conceptual rather than spatial."  Folksamerica Reinsurance Co. v. Clean Water of N.Y., Inc., 413 F.3d 307, 311 (2d Cir. 2005) (citing Kirby, 543 U.S. at 24); see also Fireman's Fund Ins. Co. v. Great American Ins. Co., 822 F.3d 620, 632 (2d Cir. 2016).  Under Kirby's conceptual evaluation, admiralty jurisdiction exists for insurance policy disputes when the nature of the insurance provided and the nature of the insured's business covered by the policy demonstrate that the policy's primary purpose is to insure marine related risks.  See Fireman's Fund, 822 F.3d at 632; Folksamerica, 413 F.3d at 316-17.  This evaluation does not consider spatial factors, like where cargo was located when a loss occurred or how much time passed since the cargo was at sea.

Therefore, the pre-Kirby insurance cases on which Prestige relies, (Opp. at 6-8), are inapposite.  For example, in Paul Marsh, Inc. v. Edward A. Goodman Co., 612 F. Supp. 635 (S.D.N.Y. 1985), the court held that there was no admiralty jurisdiction for an insurance claim for damage to inventory stored at a warehouse because the damage occurred long after the inventory had been shipped in marine transit.  See 612 F. Supp. at 639-40.  Under Kirby and its progeny, spatial factors like this have no bearing on whether admiralty jurisdiction exists.[2]

---

[2]    The only insurance case cited by Prestige that was decided after Kirby is Fabrique Innovations, Inc. v. Federal Ins. Co., No. 17 Civ. 737, 2019 WL 274896 (S.D.N.Y. Jan. 4, 2019)

Furthermore, Prestige's attempt to equate the facts of the <u>Balfour</u> cases[3] to the facts here tells only half of the story.  In <u>Balfour</u>, the lynchpin to the courts' holdings was the fact that the coffee was never in maritime commerce, either before or after warehouse storage.  See <u>Balfour I</u>, 968 F.2d at 200; <u>Balfour II</u>, 85 F.3d at 75.  Prestige tries to draw parallels to <u>Balfour</u> by stating that its inventory was distributed to customers by land-based transportation only.  However, this ignores the fact that the majority of the inventory arrived at Prestige's warehouse by ocean-going vessel and was insured by the XL Policies during ocean-going transit.  (XL Statement of Facts, ¶¶ 12-14 and XLA Ex. 9-11.)  Therefore, unlike the coffee in <u>Balfour</u>, Prestige's inventory covered under the XL Policies undisputedly was in maritime commerce.

Other cases relied on by Prestige, <u>Indagro</u>, <u>Fareast</u>, and <u>Jessica Howard</u>,[4] do not involve insurance policies and are therefore inapposite.  These cases involved contracts for sale or transportation of goods.  Therefore, they do not contain an evaluation of the "dimensions of the contingencies insured against" called for by <u>Folksamerica</u> and <u>Fireman's Fund</u>.  A distinct body of case law exists for evaluating whether a contract for the land-based sale of goods is a maritime contract.  See <u>Fareast</u>, 783 F. Supp. 2d at 497; <u>Indagro</u>, 652 F. Supp. 2d at 491.  The analysis used in <u>Indagro</u> and <u>Fareast</u> distinguishes these cases from the insurance cases cited by XL.[5]  The other

---

(amending and superseding 2018 WL 7080342 (S.D.N.Y. Dec. 20, 2018)).  In <u>Fabrique</u>, the question of admiralty jurisdiction was never presented to or decided by the court, and the parties agreed that New York law applied.  <u>Id.</u> at *6, n.4.  Therefore, the case provides no support for Prestige's argument.

[3]     <u>Atlantic Mut. Ins. Co. v. Balfour MacLaine Int'l, Ltd.</u>, 968 F.2d 196 (2d Cir. 1992) (<u>Balfour I</u>) and <u>In re Balfour MacLaine Int'l, Ltd.</u>, 85 F.3d 68 (2d Cir. 1996) (<u>Balfour II</u>).

[4]     <u>Indagro S.A. v. Bauche S.A.</u>, 652 F. Supp. 2d 482 (S.D.N.Y. 2009), <u>Fareast Commodities Res. Ltd v. SGS SA</u>, 783 F. Supp. 2d 495 (S.D.N.Y. 2011), and <u>Jessica Howard Ltd. v. M/V Sky Light</u>, No. 00 Civ. 6319, 2002 WL 362767 (S.D.N.Y. March 5, 2002).

[5]     In addition, <u>Jessica Howard</u>'s finding of no admiralty jurisdiction has been effectively overruled by <u>Kirby</u> because the facts in <u>Jessica Howard</u> are similar to the facts in <u>Kirby</u> where the Court held that admiralty jurisdiction existed.

cases Prestige cites to support its argument that courts 'regularly' address insurance coverage claims for cargo losses without considering admiralty law are inconsequential.[6]

### 2.    The Policies' Choice of Law Clause Mandates Application of Admiralty Law

Prestige repurposes its unavailing argument that admiralty jurisdiction is lacking to assert that the Policies' choice of law clause does not require application of admiralty law to XL's claim. (Opp. at 12.)  Prestige's argument regarding choice of law is equally unavailing.

The Policies' choice of law clause states that disputes under the Policies will be adjudicated according to Federal admiralty law and practice, where such law and practice <u>exists</u>.  Prestige cannot deny that <u>uberrimae fidei</u> is existing admiralty law governing rescission of an insurance policy for misrepresentation and nondisclosure of material facts.  <u>See, e.g.</u>, <u>Fireman's Fund</u>, 822 F.3d at 633.  Instead, Prestige makes a convoluted argument that admiralty law for this dispute does not <u>exist</u> because, as Prestige contends, admiralty law does not <u>apply</u> to rescission of the XL Policies.  The purpose of a contractual choice of law is to eliminate disputes over what law applies, and XL and Prestige agreed that admiralty law would apply where it exists.  Therefore, because <u>uberrimae fidei</u> is existing admiralty law governing insurance policy rescission, it must apply here.

### 3.    XL and Prestige Did Not Contract Out of <u>Uberrimae Fidei</u>

Prestige contends that XL and Prestige contracted out of <u>uberrimae fidei</u> by choosing a different standard for rescission of the Policies.  This is not so.  Prestige points to the Policies'

---

[6]    <u>See</u> Opp., at 9 and n.5 (citing <u>Beauty Plus Trading Co. Inc. v. National Union Fire Ins. Co. of Pittsburgh, Pa.</u>, No. A-3380-16T3, 2018 N.J. Super Unpub. LEXIS 1917 (App. Div. Aug. 14, 2018); <u>Warehouse Wine and Spirits v. Travelers Prop. Cas. Co. of Am.</u>, 711 F. App'x 654 (2d Cir. 2017); <u>Cougar Sport, Inc. v. Hartford Ins. Co.</u>, 737 N.Y.S.2d 770 (Sup. Ct. 2000)).  These cases are not rescission cases and involved questions of insurance policy interpretation that would be governed by state law even if they had been brought under admiralty jurisdiction.  <u>See</u> <u>Advani Enterprises, Inc. v. Underwriters at Lloyds</u>, 140 F.3d 157, 162 (2d Cir. 1998) ("Federal maritime law requires us to determine 'the scope and validity of the [marine insurance] policy provisions [] involved and the consequences of breaching them' by using state law.").

"Fraud Notice" as the basis for its position.  The Fraud Notice is one of many "Notices to Policyholders" that XL delivered to Prestige with each policy.  The Notices to Policyholders are not part of the insurance policies.  They do not bear a policy number and they are not endorsements to the policy that extend or modify its terms.  The Fraud Notice provides a general statement of the law on insurance fraud in the 50 states and the District of Columbia to comply with the regulatory requirements of each jurisdiction.  See e.g. N.Y. Ins. Law § 403(d) (McKinney).  The New York provision in the Fraud Notice is no more a part of the Policies that governs the rights and obligations of the parties than the Notice's New Jersey provision.  If, as Prestige contends, the parties contracted out of the Policies' choice of law clause, which they did not, XL notes that Prestige, a New Jersey company, does not point to the New Jersey provision, which states that a person who submits misleading information on an application is subject to criminal penalties.

Furthermore, the cases Prestige cites in support of this argument are easily distinguishable. Where courts have found that the parties contracted out of uberrimae fidei, the policies in question had an express provision in the body of the policy itself that established a different standard for rescission.  See e.g., Connecticut Indem. Co. v. Perrotti, 390 F. Supp. 2d 158, 166 (D. Conn. 2005). The Fraud Notice in the XL Policies is not an express provision of the Policies.  Likewise, the Errors & Omissions clause of the Policies does not alter or negate the application of uberrimae fidei, as Prestige suggests.  (Opp., at 21.)  The clause does not apply to information Prestige was obligated to disclose when applying for or renewing the Policies.  Rather, it applies only to delay or omissions when the insured is required to report information to XL in connection with a claim made under the policy.

## B.     Frenkel & Company Was Prestige's Broker, Not XL's Agent

As Prestige recognizes, a broker typically acts as an agent of the insured.  See American Home Assurance Co., v. Masters' Ship Mgmt., S.A., 423 F. Supp. 2d 193, 222 (S.D.N.Y. 2006);

(Opp., at 18-19.).  Although this typical relationship can be modified by contract or action, no such modification occurred here.  First, the Insurance Producer Agreement between XL and Frankel sets forth XL and Frenkel's agreement that Frenkel was not XL's agent and that it acted solely as a broker on behalf of insureds, like Prestige.  In Section 4 – "Producer Status" of the Producer Agreement, Frenkel acknowledged that it "is an agent of the insured and not an agent of [XL]," and that it "will at all times act solely in the capacity of a broker on behalf of the insureds."  Prestige attempts to brush off this provision of the contract by calling it "self-serving."  (Opp., at 20.)  Self-serving or not, the provision states the clear intent and agreement of XL and Frenkel regarding their legal relationship.  Indeed, the Frenkel brokers who acted on Prestige's behalf in soliciting insurance from XL testified that they acted on behalf of their client, Prestige, when soliciting insurance for Prestige from XL.  (XL Statement of Facts, ¶¶ 54, 58-60.)

Furthermore, no provision of the Producer Agreement granted Frenkel authority to act on XL's behalf in underwriting, quoting or binding insurance for Frenkel's policyholder clients.  In fact, the Producer Agreement contains statements to the contrary.  Prestige focuses on Section 1 – "Producer's Authority," which states that "The Producer shall periodically submit risks to the Company for its consideration as authorized by the  Company."[7]  The Producer Agreement gives Frenkel the ability to submit prospective insureds to XL for underwriting consideration so that if insurance is bound, an agreement exists between XL and Frenkel for operational aspects of the relationship between the insured, XL and Frenkel.[8]  However, the Producer Agreement makes

---

[7]     The term "risks" in this context means proposed insureds to whom XL might issue an insurance policy.  See Risk, IRMI (International Risk Management Institute), https://www.irmi.com/term/insurance-definitions/risk (last visited 2/25/19) ("Risk" is defined as "the insured or the property to which an insurance policy relates.").

[8]     These operational aspects are set forth in Section 2 and elsewhere in the Producer Agreement and address issues like Frenkel's collection of premium from the insured, Frenkel's commission, and remittance of premium by Frenkel to XL.  (XLA Ex. 23.)

clear that XL, and only XL, has authority to underwrite, quote and bind coverage for a prospective insured.  (XLA Ex. 23, Section 1, and Section 4.B. ("Producer has no authority to bind coverage on behalf of Company.").)

Prestige also argues that Section 2.A.5. – "Producer Responsibilities" vested Frenkel with authority to obtain a prospective insured's loss history on XL's behalf.  (Opp. at 20.)  But, Section 2.A.5. has nothing to do with reporting loss history or other information when underwriting policies.  It solely concerns an insured's obligation under a policy to report incurred losses or claims against the insured for which the insured seeks coverage under an existing policy.  To the extent that Section 2.A.5. delegates any authority to Frenkel, that authority is limited to the specific role of receiving notice of a loss or claim for which the insured seeks coverage.  See Ford v. Unity Hospital, 32 N.Y.2d 464, 472-73 (1973) ("An agent's power to bind his principal is coextensive with the principal's grant of authority.  One who deals with an agent does so at his peril, and must make the necessary effort to determine the actual scope of authority.").

The Fabrique case cited by Prestige does not support Prestige's argument.  The case did not involve disclosure of information to a broker during underwriting of a policy.  Rather, the issue before the court was whether the insured provided timely notice of a claim to its insurer when seeking coverage for the claim under an existing policy.  Fabrique, 2019 WL 274896, at *9-10.  In that context, the court held that the insured satisfied the policy's notice requirement by notifying its broker of the claim because the contract between the broker and the insured stated that the broker was responsible for "report[ing] all losses and claim promptly, and provid[ing] relevant loss and claim information pertaining to coverage placed with us."  Id. at *10.  However, the Court did not hold that this provision made the broker an agent of the insurer for any purpose related to policy underwriting, as Prestige suggests.  Therefore, Fabrique has no application here.  For similar

7

reasons, Prestige's reliance on Jasam Realty is misplaced.  There, the court held that the broker's knowledge at the time of binding coverage was imputed to the insurer because the insurer granted the broker express authority to accept applications for insurance and bind coverage on the insurer's behalf.  See Fidelity & Guar. Ins. Underwriters, Inc. v. Jasam Realty Corp., 540 F.3d 133, 140 (2d Cir. 2008).  The Producer Agreement between XL and Frenkel states the exact opposite.  (XLA Ex. 23 at 1, 4.)  XL did not give Frenkel the authority to consider submissions from insureds for acceptance or rejection or to bind coverage.

Therefore, nothing expressed in the Producer Agreement authorized Frenkel to act as XL's agent in underwriting insurance.  Prestige has not created a disputed issue of material fact that would alter the status of Frenkel as Prestige's broker, as Frenkel understood it to be, and make it XL's agent for purposes of obtaining information for underwriting the Policies.  Accordingly, XL is not deemed to have knowledge of information regarding Prestige's loss history that Frenkel learned while working as Prestige's broker, but failed to disclose to XL.

## C.    XL is Entitled to Rescind the Policies

Prestige's arguments turn the doctrine of uberrimae fidei on its head.  Prestige argues that it and its broker can hide behind the semantics of what could have been meant by "currently loss free" or "no known or reported losses" to essentially argue that XL did not ask the right questions or did not parse the wording of Frenkel's communications finely enough.  XL asked for Prestige's loss history on more than one occasion and Frenkel knew that Prestige's loss history was important to XL, and in fact that XL were being "sticklers" about it.  And Prestige and Frenkel knew that Prestige was not loss free.  Uberrimae fidei does not allow Prestige or Frenkel to hide the ball.  It requires "that everything then known to [Prestige] about the claims be disclosed to [XL] . . . It is the duty of [Prestige] to place [XL] in the same situation as [Prestige.]"  Thebes Shipping, Inc. v. Assicurazioni Ausonia SPA, 599 F. Supp. 405, 430 (S.D.N.Y. 1984).  This did not happen.

Prestige places too much reliance on <u>Puritan Ins. Co. v. Eagle S.S. Co.</u>, 779 F.2d 866 (2d Cir. 1985).  Facts critical to the questions of materiality and reliance in <u>Puritan</u> were unique to the London insurance market where multiple insurers underwrite percentage shares of the same policy. <u>See id.</u> 779 F.2d at 871-72.  Those facts do not exist here.  As stated in XL's Memorandum of Law, courts in the Second Circuit have refused to apply <u>Puritan</u>'s "sufficient disclosure" concept to defeat rescission under <u>uberrimae fidei</u>, when the insured's disclosure of material information was misleading, inaccurate or untruthful.  (Memo., at 22-23.)  Indeed, Judge Cardamone's dissenting opinion in <u>Puritan</u> stated that the sufficient disclosure requirement,

> [D]oes not mean that an applicant for marine insurance can knowingly disclose incomplete information – in breach of its duty of complete good faith and full disclosure – hoping that the insurer will not investigate further into the amount or circumstances of a particular loss.  The duty of full disclosure, <u>especially a disclosure to correct prior misrepresentations</u>, falls on the insured.  To shift that burden in the name of non-materiality merely contradicts the strict duty of utmost good faith that underlies marine insurance.  While a minute disclosure of every material circumstances is not required, the amount of a particular substantial loss or the fact of another loss can hardly be classified as "minute."

<u>Puritan</u>, 779 F.2d at 874 (emphasis added and citations omitted) (Cardamone, J. Dissenting).

Prestige cannot avoid rescission by claiming that the 2016 RRI report made a sufficient disclosure and corrected its previous failure to disclose its loss history of three marine cargo losses and claims since 2010.  Holding aside the ambiguous nature of the purported disclosure, which did not reveal that the loss involved theft of inventory or a claim made under Prestige's marine cargo policy, Prestige did not disclose that the 2010 warehouse theft loss involed a $790,000 marine cargo loss.  And neither Prestige nor Frenkel ever disclosed to XL that Prestige had suffered a total of three marine cargo losses since 2010.

## D.    XL Has Not Lost the Right to Rescind the Policies Due to Waiver or Ratification

Prestige cannot assert waiver or ratification under New York law as defenses to XL's claim for rescission.  Waiver is not a defense to rescission under <u>uberrimae fidei</u>.  See <u>HIH Marine</u>

Services, Inc. v. Fraser, 211 F.3d 1359, 1362 (11th Cir. 2000).  Therefore, the Court need not consider waiver once it determines that admiralty law applies.  Furthermore, Prestige's waiver and ratification arguments are premised on the contention that XL knew of grounds for rescinding the Policies in 2016 when XL received RRI's warehouse survey report.  (Opp., at 17-18.).  However, both waiver and ratification require that the insurer have knowledge of the right to rescind before either delaying in asserting the right to rescind or acting inconsistent with that right.  See Cont'l Cas. Co. v. Marshall Granger & Co., LLP, 6 F. Supp. 3d 380, 397 (S.D.N.Y. 2014), aff'd sub nom. Cont'l Cas. Co. v. Boughton, 695 F. App'x 596 (2d Cir. 2017) ("Waiver is the voluntary and intentional relinquishment of a known right."); see also GuideOne Specialty Mut. Ins. Co. v. Congregation Adas Yereim, 593 F. Supp. 2d 471 (E.D.N.Y. 2009) (An insurer waives right to rescind insurance contract when it acts in a manner inconsistent with knowledge of facts allowing for cancellation of a policy).  The information provided in the 2016 RRI report did not reveal to XL a right to rescind the Policies because the report did not disclose that Prestige experienced a prior marine cargo policy loss or that a claim had been made for that loss.  XL did not learn that Prestige suffered losses on its prior marine cargo policies or that the loss vaguely and falsely described in the RRI report was in fact the 2010 Loss, until after the July 2017 Loss.  In fact, XL did not learn the full extent of Prestige's previously undisclosed loss history until it conducted discovery in this Action.  Therefore, even if New York law applied, which it does not, Prestige cannot defeat XL's right to rescind the Policies based on waiver or ratification.

### III.   CONCLUSION

In closing, for the reasons XL has presented to the Court, XL requests that the Court grant summary judgment in XL's favor declaring the Policies are rescinded and void ab initio and dismissing Prestige's Counterclaim with prejudice.

Dated: February 27, 2019                    Respectfully submitted,

**GOLDBERG SEGALLA LLP**

 /s/ Louis H. Kozloff
Todd D. Kremin
711 3rd Avenue, Suite 1900
New York, NY 10017-4013
(646) 292-8700

Louis H. Kozloff
Hillary N. Ladov
1700 Market Street, Suite 1418
Philadelphia, PA 19103
(267) 519-6800

*Attorneys for Plaintiff/Counterclaim-Defendant*
*XL Specialty Insurance Company*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on February 27, 2019, Plaintiff and Counterclaim-Defendant XL Specialty Insurance Company's Reply Memorandum in further Support of Motion for Summary Judgment was served by email upon counsel of record listed below:

Joshua Gold
Dennis J. Nolan
Anderson Kill P.C.
1251 Avenue of the Americas
New York, NY 10020
jgold@andersonkill.com
dnolan@andersonkill.com

/s/ Louis H. Kozloff
Louis H. Kozloff