# EXHIBIT B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| XL SPECIALTY INSURANCE COMPANY, | Civil Action No.: 1:18-cv-00733 |
| Plaintiff, | **DECLARATION OF** |
| v. | **ANDREW D'ALESSIO** |
| PRESTIGE FRAGRANCES, INC., | **IN SUPPORT OF MOTION FOR** |
| Defendant. | **SUMMARY JUDGMENT** |
| | |
| PRESTIGE FRAGRANCES, INC., | |
| Counterclaim-Plaintiff, | |
| v. | |
| XL SPECIALTY INSURANCE COMPANY, | |
| Counterclaim-Defendant. | |

---

### DECLARATION OF ANDREW D'ALESSIO

I, Andrew D'Alessio, hereby declare as follows:

1. I am currently the head of Ocean Cargo - Americas for AXA XL.

2. During 2014 through 2018, I was the national practice leader for ocean cargo insurance for XL Specialty Insurance Company ("XL").

3. In my capacity as XL's national practice leader for ocean cargo insurance, I supervised Angela Nolan. From September 2014 through August 17, 2016, Ms. Nolan was the XL underwriter assigned to the Prestige Fragrances, Inc. ("Prestige") account. I supervised Ms. Nolan's work on the Prestige account.

1

4. On September 9, 2014, XL provided a Marine Cargo Quote for Prestige to Tom Votinelli of Frenkel & Company ("Frenkel"), who was Prestige's broker.

5. The Marine Cargo Quote was issued with a subjectivity that Prestige provide five-year loss runs prior to binding a policy.

6. On September 11, 2014, in response to Frenkel's request that XL bind coverage for Prestige pursuant to the Marine Cargo Quote, XL requested Prestige's five-year loss runs to satisfy the subjectivity in the Marine Cargo Quote.

7. On September 11, 2014, Votinelli of Frenkel responded to XL's request as follows: "No company loss runs. They are putting something together on Prestige letter head."

8. XL understood from Votinelli's response that Prestige would provide a letter stating that Prestige had no losses for the five years prior to 2014, which was consistent with what Votinelli had previously represented to XL in Prestige's September 5, 2014 email submission in which Votinelli stated that Prestige was "currently loss free."

9. At the time Frenkel requested that XL bind coverage for Prestige in September 2014, XL expected that if Prestige or Frenkel knew that Prestige had marine cargo losses, Frenkel would have disclosed those losses to XL.

10. At the time Frenkel requested that XL renew Prestige's marine cargo insurance policy in September 2015, XL expected that if Prestige or Frenkel knew that Prestige had prior marine cargo losses, Frenkel would have disclosed those losses to XL.

11. At the time Frenkel requested that XL renew Prestige's marine cargo insurance policy in September 2016, XL expected that if Prestige or Frenkel knew that Prestige had prior marine cargo losses, Frenkel would have disclosed those losses to XL.

12. When XL bound coverage and issued policies to Prestige in 2014, 2015 and 2016, XL did not know that since 2010, Prestige had had three marine cargo losses of varying amounts for which Prestige's prior marine cargo insurers had made payment to Prestige.

13. At no time prior to at least July 4, 2017, did XL know that Prestige had a burglary loss at its warehouse at 219 Homestead Road, Hillsborough, New Jersey that included a theft of inventory and for which Prestige submitted a claim to its marine cargo insurer and for which Prestige's marine cargo insurer paid Prestige $788,142.97.

14. At no time prior to at least July 4, 2017, did XL know that Prestige had a cargo loss in March 2012 for which Prestige submitted a claim to its marine cargo insurer and for which Prestige's marine cargo insurer paid Prestige $37,576.71.

15. At no time prior to at least July 4, 2017, did XL know that Prestige had a cargo loss in January 2013 for which Prestige submitted a claim to its marine cargo insurer and for which Prestige's marine cargo insurer paid Prestige $14,000.98.

16. If XL had known the number and frequency of Prestige's marine cargo losses and claims since 2010, XL would have decided not to quote, bind or issue marine cargo insurance policies to Prestige.

17. If XL had known of the severity, meaning the amount claimed by Prestige or paid by its insurers, of Prestige's marine cargo losses and claims since 2010, XL would have decided not to quote, bind or issue marine cargo insurance policies to Prestige.

I declare under the penalty of perjury that the foregoing is true and correct.

Executed on:  January 14, 2019

Andrew D'Alessio

3